FRANK LOGAN *vs.* LEO J. REARDON.

Middlesex. December 2, 1930. — January 6, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Negligence,* Motor vehicle, Gross.

Where, at the trial of an action, brought against the driver of an automobile by one who was riding therein at the invitation of the defendant, to recover for personal injuries received when the automobile ran into a tree, there was evidence that just before the collision the defendant was driving the automobile between forty-five and forty-eight miles an hour at about 3:30 A.M. on a wet and slippery road; that he knew that the brakes were defective; that, when the brakes were applied, the car would skid; that, against repeated remonstrances of the plaintiff and a fellow passenger, the defendant persisted in driving the automobile at high speed and forced the plaintiff, who wished to alight, to remain in the back seat; and that, after skidding when going around a corner of which the defendant knew, the automobile struck the tree. *Held,* that a finding was warranted that the defendant was indifferent to the point of criminality to every legal obligation which he owed to the plaintiff, and that his gross negligence was the cause of the plaintiff's injuries.

TORT for personal injuries received when an automobile in which the plaintiff was riding and which the defendant

was driving ran into a tree. Writ dated August 12, 1927. The declaration is described in the opinion.

In the Superior Court, the action was tried before *P. J. O'Connell*, J. The jury found for the plaintiff on the second count in the sum of $6,300. The defendant alleged exceptions.

*A. G. Sleeper*, for the defendant.

*A. J. Berkwitz*, for the plaintiff.

PIERCE, J. This is an action of tort tried to a jury. The declaration was in two counts, the first alleging ordinary negligence and the second gross negligence on the part of the defendant. At the close of the trial the defendant made a motion for a directed verdict in his favor on both counts. The judge directed a verdict as requested on the first count, but refused to direct a verdict on the second count, and the defendant duly excepted. The jury returned a verdict for the plaintiff. The bill of exceptions contains all the evidence which is material to the defendant's exception taken to the refusal to grant his motion.

The evidence warranted the finding of the following facts: Sometime in the early morning of May 14, 1927, the plaintiff went to the lunch room of the defendant on Bridge Street, in Lowell. After his lunch and time spent in talking with different persons, the plaintiff at about three-thirty put on his hat and coat. The defendant and one Finnegan were just starting out from the room and " they said, ' are you going home? ' " The plaintiff replied " yes " and they said, " we will drive you down," and to this the plaintiff said " all right." The car they rode in was a two-door sedan with a front seat that tipped forward. The plaintiff got in first by pushing the front seat down, that is, the seat next to the driver's seat, and climbed through to the back seat, the front seats being separate and the back seat a full bench; then the defendant took the driver's seat and Finnegan sat at his right. As the car proceeded they soon came upon one Toohey who had left the lunch room shortly before they had. The defendant " picked him up to take him to his

home which was three or four streets away." He sat in the front seat at the right of Finnegan, and of the defendant who was driving. The defendant stopped the car at the plaintiff's house and the plaintiff started to get out. After a short talk the defendant told the plaintiff that he had notice from Lakeview that Finnegan's machine would not start, and he wanted to know what the plaintiff could do. The defendant said, " you [the plaintiff] know the feel of it, you probably can do just something to it to start it up." The plaintiff refused to go at first because it was late then, it was foggy, and he had to go to Boston in the morning. The defendant said, " there is no need of any fear on your part because I will bring you out and I will bring you back, everything will be all right." The plaintiff finally consented to go. As the car started from the house of the plaintiff they went a short distance before they turned onto Jewett Street. As they turned the corner the car skidded, almost made a complete " half circle " and " went right around." Toohey said, " be careful, Leo, it is a bad turn." The defendant righted the car and went up Jewett Street onto Coburn Street, then he had " another bad swerve " and the plaintiff and Toohey said " take it easy." When the car reached the corner of Coburn Street and Lakeview Avenue it skidded again and Toohey told the defendant " to take it easy " and the defendant replied, " Don't be a boy scout, come along." Lakeview Avenue is a straight way for cars at that point and the defendant " speeded up quite fast " as far as Aiken Street against the protest of the plaintiff. At this point Toohey was so scared that when the car slowed down he " opened the door and jumped out, landed on . . . [his] hands and knees." Up to that time the plaintiff had pleaded with the defendant " to let him out." They left Aiken Street, the defendant " still speeding up " and the plaintiff saying " Leo, please let me out of this car, we can do the same work this afternoon, we are doing now and you can take . . . [Finnegan] to work." The defendant and Finnegan replied " sit down, don't be a boy scout, we will take care of you, everything

will be all right, you will get home O. K." Finally, as the car kept speeding the plaintiff said "come on Leo, let's call this off, we will do this thing this afternoon." Just prior to the accident, about four hundred feet from the scene of the accident, as the car "was going awfully fast, terribly fast," the plaintiff said, "Listen, let me out at this corner, anyway I will get some kind of a car home, or I will get a hitch-hike, or something." The defendant " did not slacken up, but stepped right on the gas." As the car approached Nashua Road at the corner with Lakeview Avenue, it ran between forty-five and forty-eight miles an hour, skidded right across the road and crashed into a tree with "great force."

The evidence warranted the finding that the brakes on the car were not good and that the car would skid when the brakes were applied. There was further evidence that warranted the finding that the defendant knew that the brakes were defective, knew that the brakes had to be relined, and knew that the day before the accident the car when driven about the streets by Finnegan skidded over to the left side when the brakes were applied. There was further evidence that the roads were wet and slippery, that the defendant was familiar with the curve at the place of the accident, and that when the plaintiff stood up in the back of the car to get out at Aiken Street the defendant and Finnegan " pushed him back into the seat."

The contention of the defendant that the skidding of the car which preceded the collision with the tree was not of itself evidence of negligence, much less of gross negligence, in the circumstances here disclosed is obviously unsound. At least one of the reasons for the skidding was defective brakes which had caused the car on the day before the accident to skid to the left when the brakes were applied; this defective condition of the brakes was known to the defendant and could have been remedied before the proposed trip to Lakeview was begun. It is manifest the jury on the facts here disclosed would be justified in finding that the defendant was indifferent to the point of criminality to every legal obligation which

he owed to the plaintiff. *Altman* v. *Aronson*, 231 Mass. 588. *Learned* v. *Hawthorne*, 269 Mass. 554. It follows that the case was properly submitted to the jury and the exceptions must be overruled.

*Exceptions overruled.*