CHARLES G. ISAACSON, administrator, *vs.* BOSTON, WORCESTER & NEW YORK STREET RAILWAY COMPANY.

CHARLES H. HAYNES *vs.* SAME.

HAZEL B. HAYNES, administratrix, *vs.* SAME.

ALBERT J. DUCHARME, administrator, *vs.* SAME.

Worcester.    January 7, 1932. — March 3, 1932.

Present: RUGG, C.J., CROSBY, WAIT, SANDERSON, & FIELD, JJ.

*Wilful, Wanton or Reckless Misconduct. Negligence,* Imputed, Contributory, Joint enterprise, Causing death, Violation of statute. *Motor Vehicle,* Operation. *Witness,* Cross-examination. *Evidence,* Of conscious suffering. *Practice, Civil,* Requests, rulings and instructions, Exceptions.

At the trial together of actions of tort against a corporation owning a large motor bus for the conscious suffering, death and personal injuries of occupants of an automobile with which the bus collided at night, there was evidence that the bus was travelling easterly and the automobile westerly on a way divided into three lanes, each ten feet wide, with a shoulder three feet wide on each side; that the traffic in the westerly direction was heavy; that the bus turned out into the middle lane some distance from the point of collision, and, although there were no vehicles to its right in the southerly lane, continued in the middle lane close to the northerly lane at a speed of forty-five to fifty miles an hour; that the operator of the automobile, after turning out into the middle lane, turned back "almost fully on to" the northerly lane because of the approaching bus; that the bus, after narrowly missing several vehicles ahead of the automobile, collided with it with great force and brought up almost wholly off the way on the northerly side; and that the brakes of the bus were defective so that, when applied

by the operator, they caused the bus to swerve to the left somewhat. *Held*, that

(1) Findings were warranted that the bus was being operated without proper brakes in violation of G. L. c. 90, § 7, in the amended form appearing in St. 1929, c. 43; that the speed of the bus violated G. L. c. 90, § 17; that the operator of the bus, by driving in the middle lane, violated G. L. c. 89, § 1; and that such violations of the statutes were a contributing cause of the collision;

(2) On all the evidence, a finding was warranted that the operator of the bus was guilty of wilful, wanton or reckless misconduct;

(3) Contributory negligence on the part of the occupants of the automobile was not a defence to a cause of action based on the wilful, wanton or reckless misconduct on the part of the operator of the bus.

The scope of cross-examination of witnesses at the trial of an action is largely within the discretion of the trial judge.

The mere fact, that the owner of the automobile above described took turns in driving with one of the other occupants, who was driving at the time of the collision, did not require either a ruling of law that the operator's negligence was to be imputed to the owner or a ruling that they were engaged in a common enterprise.

Certain evidence at the trial above described was *held* to have warranted a finding that one of the occupants of the automobile before his death suffered consciously as a result of injuries which he received in the collision.

No error was shown at the trial of an action in the refusal of a request for a ruling relating to a certain portion of the evidence, the trial judge subsequently having given a full and accurate charge upon the issue presented by the request.

No error prejudicial to the defendant at the trial of an action appeared where, after his counsel had objected to an improper argument to the jury by the plaintiff's counsel, the trial judge covered the matter in his charge, at the close of which the defendant's counsel took no objection nor exception to the judge's charge in this respect and did not request further instructions with regard thereto.

FOUR ACTIONS OF TORT, described in the opinion. Writ in the first action dated September 18, 1929; in the second and third actions October 1, 1929; and in the fourth action October 15, 1929.

The actions were tried together in the Superior Court before *Dillon*, J. Material evidence is stated in the opinion. The question asked the witness Lichtenfels in cross-examination by the defendant, referred to in the opinion, was as to a remark he had made just before the collision took place, and was offered by the defendant "to show that the witness was paying attention closely to the things at the time and for no other purpose."

At the close of the evidence the judge denied a motion by the defendant in each action that a verdict be ordered in its favor. The following rulings were requested by the defendant and were refused by the judge:

"39. In the Ducharme case, if the jury find that the plaintiff's intestate took turns in driving the car, the negligence of the driver Isaacson would be attributed to said intestate.

"40. In the Ducharme case if the plaintiff's intestate owned the Buick car and was riding therein, any negligence of the driver would be imputed to the intestate and would prevent recovery."

"42. In the Ducharme case there is not sufficient evidence of any actual conscious suffering of the plaintiff's intestate."

"45. In the Charles H. Haynes case, the jury should consider whether the plaintiff should not have warned the driver to get entirely out of the middle lane when the bus was first seen, and have insisted thereafter, in the driver's leaving that lane at an earlier moment, since the bus was in plain sight."

There were verdicts for the plaintiffs in the sums, respectively, of $10,200, $7,500, $13,182.50, and $11,441.25. The defendant alleged exceptions.

*J. T. Pugh*, for the defendant.

*J. A. Crotty*, (*S. B. Tilton* with him,) for the plaintiffs Charles H. Haynes and another.

*J. E. Casey*, for the plaintiff Isaacson, administrator.

*J. J. McGrail*, for the plaintiff Ducharme, administrator.

CROSBY, J. These actions of tort, for damages arising out of a collision between a motor bus and an automobile, were tried with other actions brought by the same plaintiffs against the Boston, Worcester and New York Transportation Company and John J. Ward, driver of the defendant's bus; but at the close of the evidence it was agreed that only the four cases set forth above should be submitted to the jury.

The declaration in each case was in several counts. In those in the Isaacson and Haynes, administratrix, cases there were two counts for death alleging respectively neg-

ligence and wilful, wanton or reckless misconduct and two counts for conscious suffering alleging respectively negligence and wilful, wanton or reckless misconduct.   In the Ducharme case there was an additional count alleging property damage by reason of negligence of the defendant. In the case of Charles H. Haynes the declaration contained two counts: the first alleged personal injuries due to negligence of the defendant; the second that the bus was operated "in so grossly negligent a manner and recklessly and with wilful disregard of the rights of others" that the plaintiff was personally injured.   The answer in each case pleaded a general denial and contributory negligence. The jury viewed the place of the accident.   At the close of the evidence the defendant requested in writing a directed verdict in each case on each count, which was denied. The cases were submitted to the jury on all the counts.   A general verdict in a total sum was returned on all counts in each case, in those of Isaacson and Haynes, administratrix, for death and conscious suffering, in that of Ducharme, administrator, for death and conscious suffering and property damage, and in the case of Charles H. Haynes for personal injuries.   Except in the Ducharme case on the count for property damage, negligence alone being alleged, it does not appear upon which count the jury made their finding.   See *Farr* v. *Whitney*, 260 Mass. 193, 197.   Motions for new trials were denied.   The cases are before this court on the defendant's exceptions to the refusal of the judge to grant motions for directed verdicts, to his refusal to give certain rulings requested, and to his rulings upon the evidence.

The bill of exceptions contains all the material evidence. The defendant concedes for the purposes of the bill that there was evidence that the defendant was negligent, and that John J. Ward, the driver of the bus, was in its employ and acting within the scope of his employment.   The main ground relied upon in support of the motions for directed verdicts is that there was not sufficient evidence to warrant a finding of wilful, wanton or reckless misconduct on the part of the defendant.   The evidence relating to the circum-

stances of the collision was conflicting and presented questions of fact for the determination of the jury. After verdicts for the plaintiffs the cases must be considered on the testimony with its permissible inferences most favorable to them in deciding the question of liability of the defendant. *Brown* v. *Thayer*, 212 Mass. 392, 396. *Mahoney* v. *Boston Elevated Railway*, 271 Mass. 274, 277.

.The accident occurred on Sunday, August 11, 1929, between 10:30 and 11 P.M. The Henry Ford Road is a part of the State highway about three miles in length, running easterly toward Boston and westerly toward Worcester. The roadway has three parallel divisions, or lanes, each ten feet wide, and a shoulder three feet wide on the outer or northerly and southerly lanes, making altogether thirty-six feet. The outer lanes are of gray concrete; the middle lane is of black macadam. The shoulders, also of black macadam, are a part of the travelled way. On the southerly side, outside the shoulder, for a distance of about eighteen feet from the road the land is level gravel. The road begins approximately two thirds of a mile easterly from the point where the accident occurred. The road here is almost straight but there is a long gradual curve from the west. There was evidence that at a point slightly more than five hundred feet westerly from the place of the accident a person could see an object six feet high on the highway about eight hundred fifty feet to the east. There were no street lights along the road, the night was dark, the roadway dry, and the defendant's bus was travelling in an easterly direction.

There was evidence that the plaintiff Haynes and the three intestates were travelling west in a sedan, owned by the intestate Ducharme and at the time of the accident driven by the intestate Isaacson. They all lived in Worcester and were returning from Rockport, in this Commonwealth, where they had been with five other friends who were following substantially in the northerly lane in another automobile. Between the sedan and this automobile there was a motor vehicle driven by one Knight travelling in the outer part of the northerly lane approxi-

mately one hundred twenty-five to one hundred fifty feet to the rear of the sedan and at the same speed of about thirty miles an hour.   At this time the traffic in the road was heavy going toward Worcester.   Travelling ahead of the sedan were a touring car, driven by one Lichtenfels, and a coach driven by one Cove.   Lichtenfels was driving in the northerly lane, and Cove was driving almost wholly in the northerly lane.   Shortly before the collision the sedan had "eased out into the center lane of the road as if to look ahead to pass somebody;" it never got to the center line of the road.   Before it "eased out" it was travelling in its right hand lane and after it turned into the center lane it immediately turned back.   At the time it turned out there was nothing coming toward it.   When it was in the middle lane the plaintiff Charles H. Haynes saw the bus coming a long distance away.   He said to Isaacson, "Watch the bus," and Isaacson turned to his right and started to go into his right hand lane.   He went some distance ahead after pulling over but not fully onto the gray or concrete lane.   The bus was then quite a distance ahead in the middle lane.   Haynes said, "Pull over.   Watch the bus," and Isaacson pulled over "almost fully on to the gray cement."   The defendant's bus which carried twenty-five passengers and weighed with its load in excess of eight tons was practically in the middle of the road for a long time before it reached the curve west of the accident. After it reached this curve it continued on the macadam down the middle lane until twenty-five or thirty feet from the sedan "without changing its course an inch."

John F. Cove, who was riding in the coach, testified that he saw the bus two hundred twenty-five or two hundred fifty feet away coming around a slight curve in the road about forty-five to fifty miles an hour; that the bus was in the center lane; that it was swaying and rocking and was very close to the northerly cement.   Edward M. Cove, the driver, testified that he pulled over as far as he could go; that when the bus passed he had pulled onto the dirt outside of the northerly lane.   One Crane, who also was riding in the coach, testified that he saw the bus about

one hundred yards away coming down the center lane at about fifty miles an hour; that the coach was in the center of the northerly lane; that the bus passed not more than a foot away, that "It just missed us." The bus passed the coach about one hundred fifty feet from the place of the accident.

Lichtenfels testified, in substance, that the bus was in the center lane and did not turn to the right or left and was going forty-five to fifty miles an hour; that the pressure of air as it passed forced in the side curtains of his car "with a very pronounced slapping noise"; that just before it passed his touring car was in the center of the north lane; that he pulled off to his right and the bus passed him very close, it was a matter of seconds after it passed him that he heard the crash; that as he looked back "it seemed that the entire roadway was a mass of flames and the machine that had been struck was in mid air and suspended over the north roadway just as if some giant force had picked it up and hurled it over and the car itself was a mass of flames."

Knight testified that he was about one hundred twenty-five to one hundred fifty feet behind the sedan; that he saw the lights of the bus coming in his direction and apparently in the middle lane close to the northerly lane and headed directly at him; that the bus hit the left rear corner of his car, moving it about fifteen feet, and pushing "in the frame and running board and rear fender."

One Flynn, a witness called by the plaintiffs, testified that he was riding in the automobile which was fully in the northerly lane and following Knight's car; that he saw "the big hulk of the bus looming up and coming diagonally across the road toward . . . [them] . . . That the Studebaker [in which he was riding] turned left, increased its speed, and went diagonally across the road, and when in the middle lane its right front came in contact with the right rear of the bus."

One Hare, called by the defendant, testified that he was riding in a touring car eastbound to Boston; that "The bus went by us before it got to the curve. We were driving

in the middle of the southerly lane and continued there up to the accident. When the bus passed us it swung out into the middle lane and stayed there. The last time I saw the bus before the accident it was one hundred feet ahead of us. There was no car in the southerly lane ahead of us. . . . I didn't notice the bus change its speed at all. I didn't hear or see anything to indicate application of brakes of the bus."

Ward, the driver of the bus, was called by the plaintiffs. He testified, in part, as follows: "On the previous trip from Boston to Worcester that day, I had an accident. I bumped into a car. There was a line of traffic moving and this car stopped and I couldn't stop quick enough. I tried to put on the vacuum brake, as it is called, which I put on hard and notwithstanding the fact that I put it on hard, I went on up into the car ahead of me. When I got to Worcester, there was no inspection made of my brakes. I reported my brakes were in defective condition to Mr. Charlton, an official of the company, who inspected on the Worcester end division. He sent me back without any further repairs. There were no means of giving any repairs, so I had to take the bus. I did not exactly report to him that these brakes would not hold. I told him about the accident in White City. I knew that my brakes were not taking hold as they should, and I told him, in substance, that fact." In describing the accident the witness testified, in part, as follows: "I rounded a slight curve. Traffic was very heavy coming toward Worcester. I noticed these cars, all had lights lit, and one, two, three lines coming towards me. I slowed down. The first car that was in the third lane swung over out of my way into the middle lane. Directly behind him was another which swung over to his left and my right, leaving me a space, my only choice to go through the two cars, and going through that small space, I collided with the Buick. At the time I struck the Buick, he was diagonally across the road, partly in the northerly lane and partly in the center lane. My bus was partly in the center lane and partly in the southerly lane . . . . At the time of the collision with the Buick, there was no car on my

right going in the same direction the bus was going . . . .
I applied my brakes. They did not catch hold. They
partly did. The rear left brake caught. At that time I
was going about twenty-five miles per hour. When I applied
my brakes, it caused the bus to swerve to the left a little.
There wasn't anything to hold my right wheel from fol-
lowing around. There was no equalization of the rear
brakes; that is, I had no right brake. My emergency
brakes were in good order . . . When I first saw the
Buick, it was about six hundred feet away and practically
at the moment when I saw it, I swung sharply to its right
and when it swung sharply to its right, it was in the center
lane and it swung towards the northerly concrete lane.
When I first saw it, six hundred feet away, it swung sharply
to its right hand lane and at the time of the collision, the
left rear corner of the Buick was about two feet into the
center lane and the rest of it was on the northerly concrete
lane. That was when I hit him . . . I should say I was go-
ing about twenty miles an hour when I hit the Buick. I put
my brakes on sixty feet before I hit the Buick. I then put
them on hard and tried to stop. I went that sixty feet
and hit the Buick and still continued with my brakes on
hard for ninety-one feet more before I came to a stop.
I came into a Chrysler car and drove it sideways and bent
in the side of it and the frame. Something broke in the
collision and the left front wheel floated right around side-
ways and the tire blew out, and the wheel was dragging
along all of the ninety-one feet which would have a tendency
to stop my bus just as a brake would . . . . The Chrysler
finally stopped the bus.'" "As I came around the curve,
west of the scene of the accident, there was quite heavy
traffic coming towards me. There were cars in the northerly
lane west bound as far as I could see." He further testified
that until he "saw the Studebaker" his impulse was "to
turn to the right"; that when he saw "the Buick turn to
its right, then . . . [his] impulse was to turn to the right
and go onto . . . [his] concrete lane and give the Buick
as much room as he was trying to give . . . [him]"; that
"when . . . [he] hit the Buick . . . [he] was travelling

straight or slightly to the left . . . . [He] was trying to get in between two cars"; that he passed "to the left because . . . [he] saw the Studebaker behind the Buick" and thought this was his only chance; that if "the Buick had been a foot farther west," he would not have hit it; that he relied partly on its getting out of his way; that he thought by going up on the macadam "he [the Studebaker] would give . . . [him the] road back again."

There was evidence that parallel brake marks ninety feet long on the road led up to the rear wheels of the bus which had stopped almost wholly off the road on the northerly side. The "marks were entirely on the middle lane and there were none on the southerly cement lane . . . . This southerly mark . . . ran easterly very close to the southerly cement lane, straight for twenty feet and then across the macadam center lane on a flat curve across the northerly cement lane more abruptly."

The question is whether upon the evidence most favorable to the plaintiffs the jury were warranted in finding that the operation of the bus in the circumstances constituted wilful, wanton or reckless misconduct. The alleged wrongdoer acts wantonly, wilfully or recklessly only when he inflicts the injury intentionally, or is so utterly indifferent to the rights of others that he acts as if such rights did not exist. The result is a wilful and not a negligent wrong. *Wentzell* v. *Boston Elevated Railway*, 230 Mass. 275, 277. *Query* v. *Howe*, 273 Mass. 92, 96. *Sullivan* v. *Napolitano*, 277 Mass. 341, 344, and cases cited. This court in many cases has pointed out that both ordinary and gross negligence differ in kind from wanton or reckless misconduct. *Adamowicz* v. *Newburyport Gas & Electric Co.* 238 Mass. 244, 246. *Prondecka* v. *Turners Falls Power & Electric Co.* 241 Mass. 100, 102. *Farr* v. *Whitney*, 260 Mass. 193, 197. It was said by the court speaking through Chief Justice Knowlton: "The difference in rules applicable to the two classes of cases results from the difference in the nature of the conduct of the wrongdoers in the two kinds of cases. In the first case the wrongdoer is guilty of nothing worse than carelessness. In the last he is guilty of a wilful,

intentional wrong. His conduct is criminal or *quasi* criminal. If it results in the death of the injured person, he is guilty of manslaughter." *Aiken* v. *Holyoke Street Railway,* 184 Mass. 269, 271; see also *Banks* v. *Braman,* 188 Mass. 367, 369. *McIntyre* v. *Converse,* 238 Mass. 592, 594. The complete indifference to consequences distinguishes wrongs caused by wantonness or recklessness from torts arising from negligence. *Freeman* v. *United Fruit Co.* 223 Mass. 300, 302.

The testimony of Ward, the driver of the bus, as to the cause of the accident in its important details corresponds with the testimony of witnesses who on that night were westbound. The brake marks on the roadway bear mute corroboration. There was evidence that Ward immediately before the accident was violating three statutes respecting the operation of motor vehicles on highways.

(a) G. L. c. 90, § 7, as amended by St. 1921, cc. 189, 434, 483, St. 1922, c. 342, § 2, St. 1923, c. 335, St. 1928, c. 328, § 1, St. 1929, c. 43, reads in part as follows: "Every motor vehicle operated in or upon any way shall be provided with brakes adequate to control the movement of such vehicle and . . . such brakes shall at all times be maintained in good working order." Ward testified that on the previous trip from Boston to Worcester, on the same day, he ran into another motor vehicle because of the defective condition of the brakes of the bus, and was sent back without any repairs; that on account of the condition of the brakes he started back fifteen minutes ahead of the regular time and drove more carefully than if his brakes had been in good working order. It could have been found that the defective brakes were causally related to the accident. Ward testified that if the sedan had been a foot farther to the west he would not have struck it; that when he applied his brakes it caused the bus to swerve to the left a little; that there was nothing to hold his right wheel from following around; that there was no equalization of the brakes on the rear wheels. *Murphy* v. *New England Transportation Co.* 273 Mass. 275, 277. See *Logan* v. *Reardon,* 274 Mass. 83, 86.

(b) G. L. c. 90, § 17, reads in part as follows: "No per-

son operating a motor vehicle on any way shall run it at a rate of speed greater than is reasonable and proper, having regard to traffic and the use of the way and the safety of the public." There was evidence that immediately before the accident the bus was being run at a speed of from forty-five to fifty miles an hour, and Ward testified that he was travelling at a speed of thirty miles an hour as he came around the curve, and thirty-five miles an hour when he first saw the sedan six hundred feet away. The evidence amply warranted a finding that he was running the bus in violation of the statute. See *Daris* v. *Middlesex & Boston Street Railway*, 241 Mass. 580, 581; *Smiddy* v. *O'Neil*, 277 Mass. 36, 38.

(c) G. L. c. 89, § 1, provides that "When persons traveling with vehicles meet on a way, each shall seasonably drive his vehicle to the right of the middle of the traveled part of such way, so that the vehicles may pass without interference." Ward testified that "At the time of the collision with the Buick, there was no car on my right going in the same direction the bus was going"; "I knew the law of the road that when I meet a vehicle coming towards me I should turn to the right." Nevertheless he did not change his direction. He at no time turned to his right. A witness testified that the bus "continued down the middle lane until twenty-five to thirty feet from the Buick without changing its course an inch." It is plain that the jury could have found that the defendant's failure to observe the law of the road contributed to the accident. See *Ware* v. *Saufley*, 194 Ky. 53, 55. If, as the defendant contends, an emergency existed, it could have been found that it did not arise until after the driver had turned to the left and that it was created by his own negligent act. One cannot shield himself behind an emergency created by his own unlawful act. *Rundgren* v. *Boston & Northern Street Railway*, 201 Mass. 156. *Tuttle* v. *Connecticut Valley Street Railway*, 239 Mass. 553. See also *Carpenter* v. *Campbell Automobile Co.* 159 Iowa, 52.

It is manifest from the foregoing violations of the statute that the driver of the bus could be found to have been

heedless and indifferent to every legal obligation which he owed to others. The jury were justified in finding that he was guilty of a wilful, wanton or intentional wrong which resulted in the death of three persons who had rights in the use of the way equal to those of the defendant.

If the evidence most favorable to the plaintiffs was believed the jury could have found that there was a violation by the driver of the bus of a series of statutes manifestly intended to be observed for the safety of persons upon the highway, coupled with a complete indifference to, or such reckless disregard of, probable consequences as to be equivalent to a wilful or intentional wrong. The case falls within the authority of *Aiken* v. *Holyoke Street Railway*, 184 Mass. 269, *Freeman* v. *United Fruit Co.* 223 Mass. 300, 302, *Commonwealth* v. *Arone*, 265 Mass. 128, *Leonard* v. *Conquest*, 274 Mass. 347, and other cases in which the evidence was held sufficient to warrant a finding of wilful, wanton or reckless misconduct on the part of the defendant. This is not a case where the vision of the driver of the bus became suddenly confused, or he made an error of movement or judgment. See *Austin* v. *Eastern Massachusetts Street Railway*, 269 Mass. 420, 424, 425.

The defendant contends that the plaintiff Charles H. Haynes and the three intestates, as matter of law, were not in the exercise of due care. Where as here it could have been found that the defendant's acts amounted to wilful, wanton or reckless misconduct, contributory negligence is not a defence. *Cieplinski* v. *Severn*, 269 Mass. 261, and cases cited at page 267.

The exceptions to the admission of certain questions asked on the cross-examination of a witness respecting the condition of the brakes are not argued and are treated as waived. *Barnes* v. *Springfield*, 268 Mass. 497, 504.

The question asked the witness Lichtenfels on cross-examination was excluded subject to the defendant's exception. If it be assumed without so deciding that the expected answer had probative value, its exclusion falls within the rule that the scope of cross-examination is to a great extent within the discretion of the trial judge. *Guinan*

*v. Famous Players-Lasky Corp.* 267 Mass. 501, 523.  This exception cannot be sustained.  The case of *Lamoureux v. New York, New Haven & Hartford Railroad,* 169 Mass. 338, is distinguishable.

At the close of the evidence the defendant by written motion requested the judge to direct a verdict for the defendant in each case upon grounds therein specified.  To the denial of each motion the defendant excepted.  At the close of the evidence the defendant presented forty-five requests for rulings which were examined by the judge.  After the charge, and a further charge upon certain questions, the judge read to the jury all but four of the requests; those numbered 39, 40, 42 and 45 were refused.

Request 39 was rightly refused because it could not have been ruled in the Ducharme case that if it was found that Ducharme took turns with Isaacson in driving the car the negligence ·of Isaacson would be attributed to the intestate.  It could not have been ruled that they were engaged in a common enterprise.  See *Caron* v. *Lynn Sand & Stone Co.* 270 Mass. 340, 346–347.  The fact that two occupants take turns in driving a car does not necessarily make the operation of it a joint enterprise.  *Hollister* v. *Hines,* 150 Minn. 185, 190.  Request 40 was properly refused.  If, as the jury found, the defendant was guilty of wilful or reckless misconduct, negligence of the driver of the Ducharme car would be immaterial.  *Cieplinski* v. *Severn,* 269 Mass. 261, and cases cited at page 267.

Request 42 is as follows: "In the Ducharme case there is not sufficient evidence of an actual conscious suffering of the plaintiff's intestate."  Upon this question a witness testified that with the help of another person he moved Ducharme a little way and tried to lift him, "but his head dropped back and when it hit against the macadam he gave a sharp intake of breath five times louder than normal through his mouth (witness demonstrating it) and his whole body quivered . . . .  Witness knelt by him, called him by name.  He did not answer.  All he did was to shake his head.  He put his hand on Ducharme's chest and the body trembled and shook all over.  His mouth seemed as

if he were going to talk. His face was burned. He gasped. There was froth about his mouth . . . . His face was bloody and he heard him moan." Another testified: "I saw Captain Ducharme in the middle of the flames trying to get up, then fall down on his knees and sink down slowly, face forward . . . . I heard him groaning or moaning." Another testified that he saw him "standing up in the flame, groping with his hands, then fall down, then try to stand up, and fall down again." Another testified that he saw Ducharme "standing up in the center of the fire, his face was black, his arms stretched out, groping as if blind, and he took about two steps and then fell down; got about two thirds up and fell over backwards upon his back; his chest heaved and he breathed four or five times; foam was coming from his lips and his lips were moving, but he lay motionless." There was other testimony of a similar nature. The evidence that he was "standing up in the center of the fire" and was groping with his hands is not naturally explainable as reflex movements, but tends to show consciousness and an intelligent attempt to escape from the fire. The nature of the groans as above described to the jury and the sharp intake of breath described cannot be said as matter of law not to indicate the pain and suffering of a dying man. Although the case is close upon this issue, we cannot say that the foregoing testimony did not indicate conscious suffering. It follows that the forty-second request was denied rightly. *Boutlier* v. *Malden,* 226 Mass. 479, 487–488. *Nadeau* v. *Taunton,* 247 Mass. 104, 106.

Request 45 relates to a certain portion of the evidence in the case of Charles H. Haynes. The judge was not required to deal with it specifically. The charge was full and accurate upon the issue presented by this request. No error is shown by the refusal to give it. *Ayers* v. *Ratshesky,* 213 Mass. 589, 593. *Ferris* v. *Ray Taxi Service Co.* 259 Mass. 401, 403.

It is contended that the judge erred in his treatment of the defendant's objections to certain arguments of plaintiffs' counsel to the jury. These arguments were dealt

with in the charge and it would seem that the defendant was satisfied with the instructions given on those matters. The exceptions recite: "The defendant after the charge made no reference to the arguments of counsel and took no objection or exception to the court's action and remarks relative thereto and made no request for further instructions on that point." In those circumstances the defendant has no just ground for complaint. *Commonwealth* v. *Cabot*, 241 Mass. 131, 151. *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 523. With reference to other objections to the charge, which need not be dealt with in detail, the judge by additional instructions fully protected the rights of the defendant.

We have considered all of the exceptions saved by the defendant and find no reversible error.

It results that the entry in each case must be

*Exceptions overruled.*