PEARL MUNSELL, APPELLEE, v. TRACY H. GARDNER ET AL., APPELLANTS.

285 N. W. 555

FILED APRIL 28, 1939. No. 30527.

*Loren H. Laughlin,* for appellants.

*J. A. Brown* and *W. O. Brown, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

PAINE, J.

This is an action for personal injuries, brought by a guest against the driver of an automobile and her husband, who was the owner thereof. The action was begun in the municipal court of the city of Lincoln. The jury returned a verdict for $200 in the district court, and defendants appeal.

The evidence discloses that the defendants now live on a farm near Stanton, Nebraska, but at the time of the accident lived in Lincoln. Mrs. Ruby Gardner was then the president of the S. O. S. (Send Out Sunshine) Club, of Lincoln, of about 12 members, whose only purpose was to

go out and cheer up people who were sick and helpless, and their work was largely with children who were in such condition. They would go out one afternoon in every two weeks and conduct a religious service, reading the Scripture and singing, and then share a lunch, which they would take along, with the shut-ins. On this afternoon, October 6, 1937, they were going out on such a mission, and all of the ladies in the car were members of this Send Out Sunshine Club except the plaintiff, Mrs. Pearl Munsell, who was invited to go along as the guest of Mrs. Bessie Mehlig, one of the members.

The automobile Mrs. Gardner, defendant, was driving was a 1931 Chevrolet four-door sedan, but her husband was a plumber and an excellent mechanic, and kept the car in good shape so far as it was mechanically concerned. Mrs. Gardner went around and picked up each of these ladies. Mrs. Ouderkirk was a cripple, and sat in the front seat. Mrs. Munsell was a guest, and she got in the back seat, and sat in the middle of that seat, and on the day in question they went out to a home in College View, and had a religious service for three crippled boys; then they had ice cream and cake, and started back for Lincoln. They went north on Fortieth street, which was unpaved, and were to turn west on Everett street. There is very little dispute about what happened. The defendant drove a little past the center of this intersection, at a speed of 20 to 30 miles an hour, as all testify except one deaf lady, who testified that the speed was 30 to 35 miles an hour, saying it was about 5 o'clock in the afternoon and they were all housewives and anxious to get home; that they were not going so very slowly, not extra fast. However, they were all talking, and the driver had run a very few feet too far to make the turn properly, and then attempted it rather suddenly, without putting on the brake.

Fortieth street is a rather narrow dirt road, being an old section-line road. Everett street does not go east of Fortieth street, and is only 24 feet wide, and paved. There was a round, metal stop-box, connected with the water sys-

tem, which projected up five or six inches in height six feet inside of the curb on the north side of Everett street, and there was also a stump of a tree there with some sprouts on it, and west of this, about 70 feet from the center of Fortieth street, was a tree about five or six feet north of the curb line. The driver swung to the left to make this turn, and they went straight west into the tree. It was claimed that, in striking some object, a cut or blow-out of the right rear tire occurred in which "you could stick two fingers," and this sudden deflation of that tire tended to assist in throwing the car out of the driver's control.

The plaintiff's counsel argues that the defendant, Mrs. Gardner, who was driving the car, testified that she did not remove her foot from the gas feed, that she did not slow down. She said: "All I know is that I lost control of the car and I got so I could not hold the car in the track." Plaintiff's counsel insists that, when the driver of a car continues to pump gas into it. and attempts to make a turn without applying the brake and the car runs wild, it is certainly gross negligence. He insists that, if she had taken her foot off the feed and had put it on the brake, it might have been different, and the accident would not have happened.

As assignments of error, the defendants. charged that the court erred in overruling defendants' motion for a directed verdict in their favor, made at the close of the plaintiff's evidence and again at the close of all the evidence in the case; that the court erred in refusing to grant a new trial, and urge that the verdict and judgment are not sustained by the evidence, and insist that the evidence does not sustain a finding of "gross negligence" on the part of defendant driver, Mrs. Ruby Gardner.

The applicable section of the statute reads as follows: "The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless such damage is caused by the driver of said motor vehicle being under the influence of intoxicating liquor or

because of the gross negligence of the owner or operator in the operation of such motor vehicle. For the purpose of this section, the term 'guest' is hereby defined as being a person who accepts a ride in any motor vehicle without giving compensation therefor." Comp. St. Supp. 1937, sec. 39-1129.

We have set out the facts in the case to show the mission the parties were engaged in, and that intoxicating liquor was not connected with this case, as it is with many cases of gross negligence.

As the only question in issue in the case at bar is whether the acts of the driver of the car constituted gross negligence, we may glance at some of the recent definitions of that term.

Mere failure of one to think of a possible result of his act, while possibly evidence of negligence, is not evidence of gross negligence, since it does not constitute or indicate conscious indifference. *Texas Pacific Coal & Oil Co. v. Robertson,* 125 Tex. 4, 79 S. W. (2d) 830, 98 A. L. R. 262.

"Gross negligence or wilful and wanton misconduct on the part of the driver of an automobile, so as to render him liable under a guest statute for injury to one riding with him as a guest, cannot be predicated upon the facts that he drove the car on a concrete pavement, knowing that one of the front tires was in a weakened condition by reason of being worn through the tread and part of the fabric lining, and that the injury was due to a 'blow-out' of the tire, resulting in loss of control of the car and a collision. * * * A guest in an automobile accepts the means of conveyance in the condition in which it is maintained by the owner, and cannot predicate an action for gross negligence or wanton and wilful misconduct under a guest statute, upon failure of the owner to inspect the car and keep it in such repair as to avoid the possibility of an accident." 96 A. L. R. 1477 (*Gifford v. Dice,* 269 Mich. 293, 257 N. W. 830).

"The question, what amounts to gross negligence for which a carrier will be liable to a free passenger, must be decided by the particular circumstances of each case, since

the law furnishes no adequate definition of the term 'gross negligence' beyond such generalities as that 'gross negligence is the want of slight diligence' and the like. Indeed, it has been said by the supreme court of the United States that 'if the law furnishes no definition of the terms gross negligence, or ordinary negligence, which can be applied in practice, but leaves it to the jury to determine, in each case, what the duty was, and what omissions amount to a breach of it, it would seem that imperfect and confessedly unsuccessful attempts to define that duty had better be abandoned.' *The New World v. King* (1853) 16 How. (U. S.) 469, 14 L. Ed. 1019, 10 Am. Neg. Cas. 614." 7 A. L. R. 852, Ann.

"In a comparatively few cases it has been held that the host of a car that skidded might, under the particular circumstances, be chargeable with gross negligence, heedlessness, or recklessness, wilful and wanton misconduct, or some similar default toward a guest, amounting to more than mere negligence." 113 A. L. R. 1044, Ann. See, also, *Logan v. Reardon,* 274 Mass. 83, 174 N. E. 264; *Slobodnjak v. Coyne,* 116 Conn. 545, 165 Atl. 681; *Morris v. Erskine,* 124 Neb. 754, 248 N. W. 96.

"Gross negligence, within the meaning of a statute providing that the owner or operator of a motor vehicle shall not be liable to a guest except for gross or wilful negligence of the operator, is materially more want of care than constitutes simple inadvertence, is equivalent to the failure to exercise even a slight degree of care, and is a heedless and palpable violation of legal duty respecting the rights of others; but falls short of being such reckless disregard of probable consequences as is equivalent to a wilful and intentional wrong." *Shaw v. Moore,* 104 Vt. 529, 162 Atl. 373, 86 A. L. R. 1139.

The Wisconsin court has further qualified the rule to include not only the assumption of the risk arising from the condition of the car and the skill of the driver, but also whatever risks arise from the ordinary habits of the driver.

*Olson v. Hermansen,* 196 Wis. 614, 220 N. W. 203; 12 Neb. Law Bulletin, 203.

In Nebraska we have said the term "gross negligence" as used in the statute means "negligence in a very high degree, or the absence of even slight care in the performance of a duty" (*Morris v. Erskine,* 124 Neb. 754, 248 N. W. 96); and that the existence of gross negligence must be determined by the facts and circumstances in each case (*Covey v. Anderson,* 130 Neb. 702, 266 N. W. 595); and that, where reasonable minds might draw different conclusions from the evidence, the question of gross negligence is for the jury (*Morris v. Erskine, supra*). In 15 Neb. Law Bulletin, 318, many Nebraska cases are reviewed and discussed helpfully.

In an increasing number of decisions, this court has held that the driver of an automobile should not suffer a judgment for gross negligence at the hands of his guest when the facts fail to warrant gross negligence.

An administrator of the father's estate secured a judgment against a daughter driving her car and losing control when a spike caused a blow-out, and the father was killed. The judgment was reversed. *Kelly v. Gagnon,* 121 Neb. 113, 236 N. W. 160.

In *Belik v. Warsocki,* 126 Neb. 560, 253 N. W. 689, defendant driver was going about 45 miles an hour on a paved road when another car forced it to turn onto a dirt shoulder, and in attempting to return to the road slipped into the ditch. It was held that it was error for the trial court to overrule the defendant's motion for an instructed verdict.

In *Thurston v. Carrigan,* 127 Neb. 625, 256 N. W. 39, the driver was taking a load of high school students on a treasure hunt, going south on Tenth street in Omaha at 50 miles an hour, in violation of city ordinances. The driver did not observe a sharp drop-off on rough pavement, and caught the automobile on the street car track, tipping it over, injuring guest in the rumble seat. Judge Redick directed verdict for defendant, which was sustained.

This court held that driving a car at 40 to 60 miles an hour over a railroad crossing known to be bad, and immediately after a warning to that effect, was not gross negligence under all the circumstances, and a judgment was reversed and the action dismissed. *Gosnell v. Montgomery,* 133 Neb. 871, 277 N. W. 429.

In *Black v. Neill,* 134 Neb. 764, 279 N. W. 471, a sudden stop to avoid hitting a police car threw plaintiff into the windshield, but the driver was held to be free of gross negligence.

In *Clarke v. Weatherly,* 131 Neb. 816, 270 N. W. 316, the driver drove on the Omaha municipal airport field at about 20 to 25 miles an hour at night, and made a rather sudden turn and ran into a fire hydrant not disclosed by his lights. A directed verdict for defendant driver was sustained as against his guest. This court said: "It is to be remembered that, in passing on the question of gross negligence, it is the province of this court to take a series of facts and circumstances, conceded or proved, and to declare what are the rights of the parties arising out of them. * * * Applying this principle to the facts disclosed by the present record, we are unanimously of the opinion that gross negligence was not proved, and the action of the trial court in directing a verdict for defendant was, in all respects, correct."

We will now briefly summarize the evidence of the defendant, Mrs. Ruby Gardner, who was driving the car in the case at bar. She testified that she came up Fortieth street at 25 or 30 miles an hour, and she made the turn in the center of the intersection, on the north side of Everett street; that she was then going about 20 miles an hour; that she had slowed down to make the turn, not by putting on the brake, but by lifting her foot off the gas, but not entirely off, still giving a little gas. She said the car went over the parking and landed up against a tree; that she had lost control of it. Two witnesses testify that she did not slow down.

The plaintiff testified on cross-examination that, at the very next meeting of the Send Out Sunshine Club, just

two weeks after the date of the accident, she again went to the meeting as the guest passenger of the same driver, and sat in the middle of the back seat, as before.

"Gross negligence, within the meaning of section 39-1129, Comp. St. Supp. 1933, means negligence in a very high degree, or the absence of even slight care in the performance of a duty." *Heesacker v. Bosted,* 131 Neb. 42, 267 N. W. 177.

It is the duty of the trial court to direct a verdict for the defendant under the Nebraska automobile guest law (Comp. St. Supp. 1937, sec. 39-1129), when there is not sufficient proof of either gross negligence or intoxication on the part of the driver of the car.

In our opinion, the facts do not warrant a finding of gross negligence under the guest law of Nebraska (Comp. St. Supp. 1937, sec. 39-1129), and the trial court should have directed a verdict for the defendants. Judgment reversed and the action dismissed.

REVERSED AND DISMISSED.

SIMMONS, C. J., dissenting.

In 1931, the legislature provided that the owner or operator of a motor vehicle should not be liable for damages to a guest unless the damage was caused by the gross negligence of the owner or operator. Comp. St. Supp. 1937, sec. 39-1129.

This legislature did not define gross negligence. This court in *Morris v. Erskine,* 124 Neb. 754, 248 N. W. 96, defined the term and outlined the function of courts and juries in the following language:

"We are of the opinion that in adopting the guest act the legislature used the term 'gross negligence' as indicating a degree of negligence. Negligence may be slight, ordinary, or gross. Gross negligence means great or excessive negligence; that is, negligence in a very high degree. It may be said that it indicates the absence of even slight care in the performance of a duty, and such, we think, is the meaning intended by the legislature.

"What amounts to gross negligence in any given case

must depend upon the facts and circumstances. What would amount to gross negligence under certain circumstances might, under different circumstances, be even slight negligence. Ordinarily, the question of negligence, whether slight or gross, is one of fact. If the evidence respecting it is in conflict and is such that ordinary minds might draw different conclusions therefrom, then a question of fact is presented for the jury to determine. Where a question of fact has been submitted to a jury upon conflicting evidence, this court, ordinarily, will assume the truth of the evidence tending to sustain the finding of the jury."

This court has repeatedly affirmed that holding, and since that decision, the legislature has neither defined gross negligence, nor changed the degree of negligence required to establish liability of the host for injuries received by a guest. That judicial definition of the legislative term "gross negligence" should stand the law of this state until such time as the legislature acts thereon.

In *Morris v. Erskine, supra,* this court stated that it would ordinarily assume the truth of the evidence tending to sustain the finding of the jury.

In *Covey v. Anderson,* 130 Neb. 702, 266 N. W. 595, this court stated:

" 'If there be any testimony before the jury by which a finding in favor of the party on whom rests the burden of proof can be upheld, the court is not at liberty to disregard it and direct a verdict against him. In reviewing such action, this court will regard as *conclusively established* every fact which the evidence proves or tends to establish, and if, from the entire evidence thus construed, different minds might reasonably draw different conclusions, it will be deemed error on the part of the trial court to have directed a verdict thereon.' *Bainter v. Appel,* 124 Neb. 40, 245 N. W. 16, and cases cited." (Italics ours.)

The facts established by the finding of the jury are: The defendant had driven the reverse trip earlier in the afternoon, and was returning along the same route in order to

return her guests to their homes; she *intended* to make the turn from Fortieth street to Everett street; Fortieth street is a dirt road with a high center, and at its intersection with Everett street is considerably higher than Everett street, causing a slope downhill in the highway where the turn was made; the defendant approached the turn at a rate of speed fixed as high as 30 to 35 miles an hour; she did not slow down, put on her brakes, or take her foot off the gas-feed accelerator; she went to the center of the street before attempting to turn; there was a distance of twelve feet (about a car's length) in which to turn and go west on Everett street. The defendant was an experienced, licensed driver. With full knowledge of every factor of speed, road conditions, etc., she attempted to make the turn, failed, drove the car onto the parking, and traveled over 70 feet without shutting off the gas or putting on the brakes. The car hit a tree when it was going 15 to 20 miles an hour, and the plaintiff was injured.

The accident and resulting damage was caused by the action of the defendant in making a turn at a high rate of speed, and under conditions where any driver should have known that accident and serious injury, if not death, would follow.

The majority opinion states: "It was claimed that, in striking some object, a cut or blow-out of the right rear tire occurred in which 'you could stick two fingers,' and this sudden deflation of that tire tended to assist in throwing the car out of the driver's control." It is true that the defendants in their answer plead that the accident was "due entirely to the deflation or blowing out of the right tire on said automobile and the loss of control thereof." It is also true that the evidence, *even of the defendants,* does not support that contention. The making of such a claim does not establish it to be a fact, nor does the assertion establish a defense. After the accident, there was a cut of two or three inches in the casing on the right rear wheel. The cause of the cut is not shown. The

condition of the tube is not shown. The tire was flat ten or fifteen minutes after the accident. Its condition as to deflation prior thereto is not shown. The defendant car owner testified that he examined the tracks after the accident, and they did not show the tire to have been flat. There is no testimony that the tire was flat before the car hit the tree.

The majority opinion recites the testimony of the defendant that, "All I know is that I lost control of the car and I got so I could not hold the car in the track." The testimony is correctly quoted. However, the clear inference of the quotation, as contained in the majority opinion, is that the defendant suddenly lost control of her car, causing the accident; that the loss of control was caused by the condition of the tire, and, hence, that it would not constitute gross negligence. The quoted statement was made in answer to this question, "What occurred *as you made the turn?*" On cross-examination, she was asked if she noticed anything in the operation of the car as she attempted to make the turn that would indicate that she had a flat tire. She answered that just as she attempted to make the turn the car went into this "funny operation" and that she could not control it. She was then asked: "That is, you were attempting to swing it back into Everett street and could not do so? A. Yes, sir." She further testified that she did not notice any swaying of the car as if it had a soft tire and did not hear a report as if there had been a blow-out.

It is clear from defendant's testimony that the loss of control came *after* she had made the turn, and after the car was traveling in the parking, for she could not "swing it back into Everett street." The cut in the casing is not shown to have been a contributing factor to the accident. The accident was caused by defendant's act *in making the turn;* the other things that happened thereafter were the result of that act.

The majority opinion recites that plaintiff went riding with the defendant again two weeks after the accident.

What difference does it make if she did? That fact does not negative gross negligence. The rights of the plaintiff and the liability of the defendant were fixed when the accident and the injury occurred. The later trip could not have any effect on that right and liability. It establishes nothing except the mental attitude of the plaintiff toward the defendant after the accident.

This court has held that gross negligence is "negligence of a very high degree that includes *but does not necessarily* extend to wanton, wilful or intentional disregard of the guest's safety." *Gosnell v. Montgomery*, 133 Neb. 871, 277 N. W. 429. (Italics ours.)

The majority opinion, as authority for its holding that the act of the defendant did not constitute gross negligence, cites a series of cases from other jurisdictions in which the elements of "conscious indifference," "wanton and wilful misconduct," "heedlessness," and "wilful negligence" were present.

Proof of those elements is not necessary in order to establish gross negligence as defined by this court, and, accordingly, those cases should not be accepted as yard-sticks to determine whether or not gross negligence existed in this case. The effect of this decision, based upon these citations, is to restrict further the right of injured guests to recover. It puts new elements into the heretofore accepted definition of gross negligence and wraps the cloak of legal immunity from liability still more closely about those who disregard rules of safety in the driving of motor vehicles.

The majority opinion also cites cases of this court and of other jurisdictions which involved a blow-out, skidding, acts done by the driver to avoid accidents, unexpected and unobserved conditions or obstructions in the highway, the putting on of brakes suddenly after warning by a guest, a sudden stop to avoid hitting some one, an undisclosed danger in the course of travel. Those elements do not exist in this case, and, hence, those cases should not be taken as controlling of the decision herein.

As I see it, the majority opinion is erroneous in at least three particulars: First, it does not assume the truth of the evidence "tending to sustain the finding of the jury." Second, it relies upon decided cases from this and other jurisdictions that contain controlling elements that are not in this case. Third, it does not apply the rules adopted in *Morris v. Erskine, supra,* as to what constitutes gross negligence, and, in particular, does not follow the rule that the "question of negligence, whether slight or gross, is one of fact," and that, where the evidence is "such that ordinary minds might draw different conclusions therefrom, then a question of fact is presented for the jury to determine."

This court has repeatedly stated, as it did in *Morris v. Erskine, supra,* that "what amounts to gross negligence in any given case must depend upon the facts and circumstances" *of each case.*

There is ample evidence in this record to support the finding of the jury that the defendant was grossly negligent under the facts and circumstances of this case. This court should not substitute its conclusions of fact for the finding of the jury. It accordingly follows that plaintiff should be permitted to recover and that the judgment of the trial court should be affirmed.

The majority opinion not only reverses the case, but dismisses it. This also, in my opinion, is erroneous. If the case is to be reversed, it should be remanded for further proceedings in the trial court as the parties and the trial court might determine. We should not assume that additional evidence cannot be secured.