CHARLES C. LEARNED vs. PETER HAWTHORNE, JR.

JOSEPH A. BOLGER vs. SAME.

Hampden.    November 5, 1929. — January 2, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Negligence*, Motor vehicle, Gross, In use of way.    *Evidence*, Competency.
*Practice, Civil*, Charge to jury, Exceptions.

At the trial of an action of tort for personal injuries against the operator
of an automobile, by one who was riding therein as the defendant's
guest, there was evidence that the automobile was proceeding at
night on a street which was straight for five hundred feet and which
contained a single car track in the center; that, when there was a
street car on the track, there was not room for two automobiles to
pass abreast on the same side of the track; that the defendant, having
followed another automobile for a distance, turned out onto the car
tracks to pass the other automobile without giving any signal; that,
when he was abreast of the other automobile, a lighted street car
appeared coming toward him one hundred feet away; that, after
the defendant's automobile had gone a few feet farther, the front part
of it collided with the front part of the street car; that the lights of
the defendant's automobile were lit; that the way to the defendant's
left was clear; and that the defendant's breath smelled of liquor after
the accident.    The defendant testified that he could have stopped
behind the other automobile without attempting to pass it; that he
was so close to it that he could not have seen the street car until he
turned out onto the tracks; that he knew that there were ruts near the
tracks and that if his automobile got caught on the tracks and got its
wheels caught in one of the ruts it would be pretty difficult to get out;
and that that was "just what happened."    *Held*, that

(1) The evidence warranted a finding that the defendant had been
guilty of gross negligence;

(2) The jury properly might consider the evidence, that the de-
fendant had drunk intoxicating liquor, in determining whether he had
been guilty of gross negligence.

The judge at the trial above described charged the jury in part as follows,
quoting from *Altman* v. *Aronson*, 231 Mass. 588, 591: "Gross negli-
gence is substantially and appreciably higher in magnitude than
ordinary negligence.    It is materially more want of care than con-
stitutes simple inadvertence.    It is an act or omission respecting legal
duty of an aggravated character as distinguished from a mere failure
to exercise ordinary care.    It is very great negligence, or the absence
of slight diligence, or the want of even scant care.    It amounts to

indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected. . . . It is a heedless and palpable violation of legal duty respecting the rights of others." Then, having instructed them to determine whether the defendant had been negligent according to the standard of care exercised by the ordinary prudent man, he continued: " . . . then you analyze the facts, as to whether the conduct, having regard to all the facts and circumstances, was a little worse than negligent; as to whether it found its place somewhere between these two limits that I have mentioned, — negligence and wilful, wanton and reckless conduct. . . . Now, if you say that he was negligent, and you say he was more than negligent, and that you would call his conduct something somewhere between negligence and wilful, wanton and reckless conduct, — you don't need to say just where it is, but if it is somewhere between those two points, then it is gross negligence." At the close of the charge, upon objection by the defendant to the use of the word "worse," the judge further instructed the jury to disregard that word and to understand that he meant that there must be "more" than ordinary negligence. The defendant excepted to the use, in defining gross negligence, of the expressions "a little worse" or "a little more" than ordinary negligence, and also excepted to the definition of gross negligence as conduct "somewhere between negligence and wilful, wanton and reckless conduct." *Held*, that

(1) In its practical operation in the circumstances shown by the evidence, there was no substantial variance between the instruction given and the definition quoted from the opinion in *Altman* v. *Aronson;*

(2) A finding was warranted on the defendant's testimony alone that he had been guilty of gross negligence;

(3) In the circumstances, the exceptions must be overruled.

Two ACTIONS OF TORT against the operator of an automobile for personal injuries sustained by persons riding therein as guests of the defendant. Writs dated December 14, 1927.

Material evidence at the trial in the Superior Court before *Dillon*, J., is stated in the opinion. The judge denied a motion by the defendant in each action that a verdict be ordered in his favor.

The judge charged the jury in part as follows: "Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. It is very great diligence [*sic*], or the absence

of slight diligence, or the want of even scant care. It amounts to indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected. . . . It is a heedless and palpable violation of legal duty respecting the rights of others." Then, having instructed the jury to determine whether the defendant had been negligent according to the standard of care exercised by the ordinary prudent man, he continued: ". . . then you analyze the facts, as to whether the conduct, having regard to all the facts and circumstances, was a little worse than negligent; as to whether it found its place somewhere between these two limits that I have mentioned, — negligence and wilful, wanton and reckless conduct. . . . Now, if you say that he was negligent, and you say he was more than negligent, and that you would call his conduct something somewhere between negligence and wilful, wanton and reckless conduct, — you don't need to say just where it is, but if it is somewhere between those two points, then it is gross negligence."

At the close of the charge, there were the following colloquy and further instructions to the jury:

"THE JUDGE: Have you any suggestions?

"PLAINTIFF'S COUNSEL: I have none, your Honor.

"DEFENDANT'S COUNSEL: I think when you were reading you said it is very great *diligence,* when you were reading from the case. You said it is very great *diligence,* instead of *negligence.*

"THE JUDGE: (To the jury)  Gentlemen, In order to make sure that you won't misunderstand what I have attempted to read, I will again read this paragraph [reading from the opinion in *Altman* v. *Aronson,* 231 Mass. 588, at page 591]: 'Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. It is very great negligence, or the absence of slight diligence, or the want of even scant care.'"

"DEFENDANT'S COUNSEL: There are two places in the instructions here I was going to take exception to. One is where you said gross negligence. You had given an illustration and illustrated negligence; then you said, 'If you find there is just a little more than that it is gross negligence.'

"THE JUDGE: Yes; I stand by that.

"DEFENDANT'S COUNSEL: I want to take an exception to that.

"THE JUDGE: That is, I said that it is more than ordinary —

"DEFENDANT'S COUNSEL: Not *more;* worse; a little worse.

"THE JUDGE: The word *worse.* I will cut out the word *worse* if there is objection to that.

"DEFENDANT'S COUNSEL: Well, a little *more* would be just the same thing. And I also except to where, I think, you said, 'If it is anywhere between negligence and wanton, wilful misconduct it is gross negligence.'

"THE JUDGE: Well?

"DEFENDANT'S COUNSEL: That is all.

"THE JUDGE: (To the jury) Objection is raised to the use of the word *worse* in my charge. I ask you to disregard the fact that I used the word *worse,* and understand that what I meant to convey was that it was more than ordinary negligence; that is, that the law requires that it shall be more than ordinary negligence to be gross negligence, and that conduct known as gross negligence is that which, as I have indicated is located in between ordinary negligence and wilful, wanton and reckless conduct, being somewhere below where you would place wilful, wanton and reckless conduct and somewhere above the place that would mark ordinary negligence."

The jury found for the plaintiff in the first action in the sum of $7,000; and for the plaintiff in the second action in the sum of $2,000. The defendant alleged exceptions.

The case was submitted on briefs.

*A. R. Simpson, C. R. Clason, & G. J. Callahan,* for the defendant.

*J. B. Ely & W. C. Giles,* for the plaintiffs.

PIERCE, J. These are two actions of tort for personal injuries, arising out of the same accident and tried together to a jury.

The injuries were sustained by the plaintiffs while they were riding as guests of the defendant in an automobile, owned and driven by him, on Liberty Street, Springfield, Massachusetts, on the night of May 7, 1927. At the conclusion of the evidence the defendant moved for a directed verdict in each case. The motions were denied and the defendant duly excepted. The pleadings are made a part of the bill of exceptions. The defendant also excepted to certain parts of the charge, as hereinafter set forth. The jury returned a verdict for the plaintiff in each case.

All the material evidence is contained in the bill of exceptions. In their aspect most favorable to the plaintiffs' contentions, the pertinent facts thus disclosed are in substance as follows: Liberty Street is a public highway extending northerly from Springfield toward Chicopee Falls. At the time of the accident it was a paved street and was straight for more than five hundred feet in the vicinity of the place of the accident. There was a single track trolley line in the center of the road, and, assuming there was a trolley car on the track, there was not room for two automobiles to pass abreast on the same side of the track. On the night of the accident the plaintiffs were invited and accepted an invitation of the defendant to take a ride with him in his automobile. The plaintiff Learned sat on the front seat with the defendant and the plaintiff Bolger sat on the back seat. It was dark when the automobile reached Liberty Street. Sitting on the left of the automobile, the defendant was driving on the right hand side of that street and the trolley track at the rate of twenty to twenty-five miles an hour and was following on the same side of the road and about fifteen feet behind another automobile which was travelling "around fifteen to twenty miles an hour." The defendant turned out onto the trolley track to his left to pass the automobile ahead of him, and when he was abreast of it he and the plaintiffs saw an electric car lighted up about one hundred feet away coming toward them. The automobile

of the defendant was lighted but he gave no signal of any kind as he tried to pass the automobile ahead. The way on the defendant's left was perfectly clear and no traffic other than the trolley car was coming on that side of the road. After he pulled to the left and was upon the car track his automobile travelled but a few feet before the front end of it came in contact with the front end of the trolley car.

The defendant testified that he did not have to pass the automobile in front of him; that he was very close to it just before the collision, ten or fifteen feet behind, and he could have put on his brakes and stopped without hitting it if he had wanted to; that "If he had been looking before he turned out he was too close behind the other automobile to see the trolley car" and that "He was so close behind the automobile ahead that he couldn't have seen the trolley car coming until he pulled out onto the tracks." He further testified that on that night he knew as a fact that the street near the scene of the accident was in bad shape and that there were deep ruts near the trolley track; that the rails were below the surface of the road quite considerably, and if an automobile got caught on the car tracks and got its wheels in one of these ruts it would be a pretty difficult job to get out and "that is just what happened"; that "He did not think of the matter at all as to whether it was a dangerous thing to do to turn out from behind an automobile onto the trolley tracks when he couldn't see what was coming"; and that "He knew that trolley cars ran through there quite often."

A captain in the Springfield Police Department testified that he had a talk with the defendant within twenty minutes after the accident happened; that "The defendant denied driving the automobile, . . . [and] said that a fellow in the front seat was driving and that they were taking the fellow's girl home. He told the defendant that the plaintiffs said that he was driving the automobile and asked the defendant why he didn't know that he was driving the automobile. He asked the defendant if he was drunk. He stooped down and smelled the defendant's breath. He could smell liquor

on the defendant's breath.  The defendant told him that he had had a couple of bottles of beer.  He didn't smell any beer off his breath.  It smelled more like whiskey.  He got a whiskey breath from the defendant.  The defendant still denied that night he was driving the automobile and denied having any more than two bottles of beer."

The jury were instructed in part as follows:  ". . . in determining whether the conduct of the defendant is proper or improper you are first to say, What would the ordinary careful and prudent man [do] under those circumstances, how would he perform?  And when you have said what his conduct would be, then you compare the conduct of the defendant with that conduct, and by that comparison you say whether the conduct in this particular case was negligent or not."  He further instructed them that, having determined the issue as to whether the conduct was that of negligence, "then you analyze the facts, as to whether the conduct, having regard to all the facts and circumstances, was a little worse than negligent; as to whether it found its place somewhere between these two limits that I have mentioned, — negligence and wilful, wanton and reckless conduct . . . .  Now, if you say that he was negligent, and you say he was more than negligent, and that you would call his conduct something somewhere between negligence and wilful, wanton and reckless conduct, — you don't need to say just where it is, but if it is somewhere between those two points, then it is gross negligence."

In support of his exception to the use of the word "more" in the instruction above quoted, the defendant contends that the portion of the instructions which includes the adjective "more" is inconsistent with the instructions which the judge read to the jury from *Altman* v. *Aronson*, 231 Mass. 588, 591; and more particularly with the sentences of that opinion which follow the instruction given and were not read to the jury, namely: "The element of culpability which characterizes all negligence is in gross negligence magnified to a high degree as compared with that present in ordinary negligence.  Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the

circumstances require of a person of ordinary prudence. But it is something less than the wilful, wanton and reckless conduct which renders a defendant who has injured another liable to the latter even though guilty of contributory negligence, or which renders a defendant in rightful possession of real estate liable to a trespasser whom he has injured. It falls short of being such reckless disregard of probable consequences as is equivalent to a wilful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from wilful and intentional conduct which is or ought to be known to have a tendency to injure"; because the quoted instructions "fall far short" of the definition of gross negligence as given in *Altman* v. *Aronson, supra,* at page 593, to wit, ". . . gross negligence is the omission of even such diligence as habitually inattentive and careless men do not fail to exercise in avoiding danger to their own person or property." As a corollary to the definition of gross negligence given in *Altman* v. *Aronson, supra,* the defendant contends, as we understand him, that that degree of negligence is a certain and definite want of due care which does not vary as the negligent conduct of a person is near or remote to ordinary negligence or to wilful or wanton misconduct.

In its practical operation there was no substantial variance between the instruction given and the definition of gross negligence as laid down in *Altman* v. *Aronson, supra.* Measured by the literal words of the definition or by the spirit thereof, it is indisputable on the defendant's testimony alone that the jury would be warranted in finding that the conduct of the defendant was that of one who recklessly exercised no forethought, no diligence, for the safety of his guests or of himself, when in a situation which the most inattentive and careless person would recognize as pregnant with imminent peril to life, person and property. The evidence, if believed, that the defendant shortly before the accident had drunk some form of intoxicating liquor, as manifested by his breath immediately after the accident, was proper for the consideration of the jury and relevant in their consideration of the issue of his negligence and of the

degree of such want of care and diligence, should they find in his conduct a lack of ordinary care.

Without a discussion of the evidence, it is plain it could not have been ruled that either one of the plaintiffs, in the circumstances disclosed, as matter of law failed to exercise due and reasonable care for his own protection and safety. *Lambert* v. *Eastern Massachusetts Street Railway*, 240 Mass. 495. In each case the exceptions are overruled.

*So ordered.*