## WILLIAM H. COOK *vs.* JAMES COLE.

Worcester.    September 22, 1930. — January 5, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Negligence,* Invited person, Gross negligence, Motor vehicle, In use of way, Violation of statute. *Motor Vehicle,* Weight, Registration, Operation. *Nuisance.*

At the trial of an action of tort for personal injuries sustained while the plaintiff was riding in a motor truck operated by the defendant, a finding, that the plaintiff had been invited by the defendant to ride in the truck, was warranted on evidence that, while the plaintiff was sitting outside a lunch cart in a town, the defendant drove the truck up to the lunch cart and stopped, asking the plaintiff if he were a certain person; that the plaintiff replied in the negative and told the defendant that he was on his way to a certain city; that the defendant then said he was going a part of the way to that city and that the plaintiff could ride along with him; and that the plaintiff said "all right" and got into the truck.

The plaintiff at the trial above described was not bound by testimony of the defendant, whom he had called as a witness, which was in conflict with the plaintiff's contentions.

There was further evidence at the trial above described that the truck rounded a curve and began to descend a very slight down grade, there being another curve farther on; that the speed of the truck increased to thirty-five miles per hour, whereupon the plaintiff asked the defendant to stop to allow him to leave the truck; that the defendant disconnected the gears so that the truck "seemed to loll to one side, first to the left and then to the right and then back to the left again"; that, as the truck was going thirty-five to forty miles an hour, the plaintiff again "requested the defendant to let him off the truck as the truck was going too fast"; that the defendant said to the plaintiff, "We are all right; you will be all right"; that, some one hundred feet farther on and three or four hundred yards from the top

of the grade, the truck "shot off the road" and struck a large tree with great force, whereby the plaintiff was injured; and that the truck with its load "was about five hundred pounds overweight." The accident occurred in 1927. *Held*, that

(1) The evidence did not warrant a finding that the defendant was guilty of gross negligence;

(2) The evidence did not warrant an inference that the truck and load exceeded fourteen tons in weight or "eight hundred pounds upon any inch of the tire" in violation of G. L. c. 85, § 30, in the amended form appearing in St. 1925, c. 342, § 2;

(3) Although an inference was proper that the truck and load exceeded the aggregate "weight" and "maximum carrying capacity" for which it was registered under G. L. c. 90, § 33, as amended by St. 1925, c. 342, § 1, it did not constitute a nuisance on the way, nor was its operation in violation of G. L. c. 90, § 9, as amended by St. 1922, c. 303, § 3, since there was nothing to show that it was not registered legally;

(4) Nothing appeared to show that the operation of the "overweight" truck was prohibited by any statute or regulation;

(5) The plaintiff could not recover.

TORT. Writ dated August 15, 1927.

Material evidence at the trial in the Superior Court before *Brown*, J., is stated in the opinion. The judge ordered a verdict for the defendant. The plaintiff alleged an exception.

*J. C. McDonald*, for the plaintiff.

*C. C. Milton*, (*S. B. Milton* with him,) for the defendant.

FIELD, J. This is an action of tort to recover damages for personal injuries alleged to have been received by the plaintiff by reason of the gross negligence of the defendant when the plaintiff, by invitation of the defendant, was riding on a motor truck operated by the defendant. At the close of the plaintiff's case a verdict for the defendant was directed and the plaintiff excepted.

There was evidence that, on March 16, 1927, the defendant was driving a motor truck loaded with crates of oranges from Somerville to Springfield, that the plaintiff got into the cab of the truck at Leicester, that when he was riding there, sometime between four and five o'clock in the morning, on a State highway in Warren, the truck "shot off the road" to the left and struck a tree, and that the plaintiff was injured. There was no evidence

that compensation in any form for the transportation of the plaintiff was paid or promised to the defendant, his employer, or the owner of the truck.

The plaintiff seeks to bring himself within the rule, well established in this Commonwealth, that the operator of a motor vehicle, by analogy to the liability of a gratuitous bailee, is liable for injuries resulting from his gross negligence to an invited person whom he is transporting gratuitously. *Massaletti* v. *Fitzroy,* 228 Mass. 487. *Flynn* v. *Lewis,* 231 Mass. 550, 554. *Burke* v. *Cook,* 246 Mass. 518, 521. *Marcienowski* v. *Sanders,* 252 Mass. 65, 67. *Manning* v. *Simpson,* 261 Mass. 494. *Rog* v. *Eltis,* 269 Mass. 466. The defendant contends that the evidence did not warrant a finding either (a) that the plaintiff was riding on the truck by invitation of the defendant or (b) that the defendant was guilty of gross negligence.

*First.* The evidence warranted a finding that the plaintiff was riding on the truck by invitation of the defendant. This finding could have been made on the plaintiff's testimony that when he was sitting on a rail outside a lunch cart, in Leicester, the defendant " drove a truck alongside the lunch cart and stopped because he thought he knew me. He said ' hello ' and asked me if I were so and so and I said ' no,' and told him that I was going to Hartford, Connecticut. He said he was going as far as Springfield; I could ride along with him. I said all right and I got in the cab and sat down alongside of him." The plaintiff, who called the defendant as a witness, would not have been bound by the conflicting testimony given by such adverse party even if it had been uncontradicted (*Emerson* v. *Wark,* 185 Mass. 427, *Phillips* v. *Eldridge,* 221 Mass. 103, 104, *Gordon* v. *Bedard,* 265 Mass. 408, 411), and, *a fortiori,* was not bound by it where, as here, it was contradicted. See *Whiteacre* v. *Boston Elevated Railway,* 241 Mass. 163, 165; *Newman* v. *Levinson,* 266 Mass. 264, 267. The evidence could be found to show more than mere acquiescence by the defendant in the presence on the truck of a self-invited guest. See *West* v. *Poor,* 196 Mass. 183, 185. Furthermore, even if the plaintiff was

riding on the truck solely for his own purposes, it does not follow necessarily that he was not an invited person within the meaning of the rule. Cases involving the obligation of a landowner to persons going upon the land for their own purposes (see *Plummer* v. *Dill,* 156 Mass. 426; *Hart* v. *Cole,* 156 Mass. 475; *Glaser* v. *Congregation Kehillath Israel,* 263 Mass. 435) are distinguishable because of the difference in the ground of liability, as was pointed out in *Massaletti* v. *Fitzroy, supra,* at pages 507–508.

*Second.* The evidence did not warrant a finding that the defendant was guilty of gross negligence.

The plaintiff's account of the cause of the accident may be summarized as follows: For five or six hundred feet before the motor truck came to the place of the accident there was no other traffic in the road. There was a curve in the road and the beginning of a down grade three or four hundred yards before the place of the accident was reached and another curve farther on, though there was no evidence of the degree of either curve or of the grade, except the testimony of the defendant that the road was " very slightly down grade." The motor truck was travelling about twenty-five (or thirty-five) miles an hour when the beginning of the grade was reached. Its speed increased. When it was travelling thirty-five miles an hour, or more, the plaintiff asked the defendant " to stop to allow him to leave the truck " and saw the defendant disconnect the gears so that the truck " seemed to loll to one side, first to the left and then to the right and then back to the left again." One hundred feet from the place where the truck left the road it was travelling about thirty-five to forty miles an hour. The plaintiff then " requested the defendant to let him off the truck as the truck was going too fast. The defendant then said to the plaintiff, ' We are all right; you will be all right.' " After this conversation " the truck shot off the road." It could have been found from the testimony of other witnesses that the diameter of the trunk of the tree which was struck was twelve or fifteen inches, that the " tree was

bent down with broken limbs " and that the front part of the truck was damaged. There was evidence that the truck operated by the defendant was a " two and one-half ton truck " " which was registered for six tons." The plaintiff testified that the defendant told him that " the truck was about five hundred pounds overweight, with the load."

The defendant's testimony, the whole or part of which might have been disbelieved, was in substance a denial of the truth of most of the testimony of the plaintiff. His explanation of the cause of the accident was that while passing a larger truck, at the rate of twenty miles an hour, on a straight part of the road, his truck was crowded to the left so that the left front wheel got into the gravel and he was unable to turn the truck back into the road before it reached the tree. He testified that the plaintiff, " who was asleep, had fallen onto the defendant's shoulder " and that he " gave . . . [the plaintiff] a push to the other side of the cab."

Gross negligence was defined and distinguished from ordinary negligence in *Altman* v. *Aronson,* 231 Mass. 588, 591–593. (See *Learned* v. *Hawthorne,* 269 Mass. 554, 560–562). It was there pointed out that gross negligence differs in degree rather than in kind from ordinary negligence and is " materially more want of care than constitutes simple inadvertence " but need not amount to "such reckless disregard of probable consequences as is equivalent to a wilful and intentional wrong." Various tests of gross negligence were set forth, but it was added that the " definition does not possess the exactness of a mathematical demonstration." Decided cases, however, by the application of the definition to evidence, to some extent have marked the line between ordinary negligence and gross negligence in the operation of motor vehicles.

Tested by the decided cases, the evidence here does not establish gross negligence on the part of the defendant. The fact, unexplained, that the truck went off the road at the left and struck a tree, did not show gross negligence on the part of the defendant. *Burke* v. *Cook,* 246 Mass.

518. *Shriear* v. *Feigelson,* 248 Mass. 432. There was no
evidence that he was not paying attention to his driving.
It does not appear that the operator was asleep or had
closed his eyes, as in *Blood* v. *Adams,* 269 Mass. 480 (com-
pare *Shriear* v. *Feigelson, supra*), or had been drinking
intoxicating liquor, as in *Learned* v. *Hawthorne,* 269 Mass.
554, and in *McCarron* v. *Bolduc,* 270 Mass. 39 (compare
*Bertera* v. *Cuneo,* 273 Mass. 181), or that his attention was
diverted to other matters, as in *Rog* v. *Eltis, supra,* and in
*Kirby* v. *Keating,* 271 Mass. 390. Neither the plaintiff's
account of the accident nor that of the defendant showed
that the defendant was driving improperly with relation
to other traffic, as in *Manning* v. *Simpson,* 261 Mass. 494,
where the operator drove across the path of an approach-
ing motor vehicle. Nor do we perceive any combination
of the testimony which would warrant a finding of gross
negligence in this respect. In view of the meager evidence
of unfavorable road conditions, the direct evidence of the
speed of the truck and inferences of such speed from its
" lolling " from side to side of the road and from the force
of its impact against the tree, though warranting a finding
of ordinary negligence, did not warrant a finding of gross
negligence. *Marcienowski* v. *Sanders,* 252 Mass. 65. See
also *Burke* v. *Cook, supra. Healy* v. *O'Riley,* 257 Mass.
413, and *Terlizzi* v. *Marsh,* 258 Mass. 156, are distinguish-
able. Nor was such a finding warranted by the testimony to
the plaintiff's requests that the defendant let him off the
truck, nor by the testimony that the defendant told the
plaintiff that he would be " all right." See *Bertelli* v.
*Tronconi,* 264 Mass. 235; *Bank* v. *Satran,* 266 Mass. 253.
As there was no evidence that the road was more than
" very slightly down grade " the testimony that the de-
fendant disconnected the gears, thus permitting the truck
to coast, did not show gross negligence.

It remains to consider the effect of the testimony that
the truck with its load " was about five hundred pounds
overweight." In the absence of evidence of the effect of
such overloading on the operation of the truck, a finding
of gross negligence was not warranted, unless on the

ground that the overloading was a violation of a statute or of a rule or regulation adopted under authority of a statute. No such violation. was proved. The evidence was not sufficiently definite to warrant an inference that the truck and load exceeded fourteen tons in weight or "eight hundred pounds upon any inch of the tire" in violation of G. L. c. 85, § 30, as finally amended by St. 1925, c. 342, § 2 (see now St. 1930, c. 353, § 1), and the effect of any such violation on the liability of an operator need not be considered. It could have been inferred, however, that the truck and load exceeded the aggregate "weight" and "maximum carrying capacity" for which the truck was registered under G. L. c. 90, § 33, as amended by St. 1925, c. 342, § 1, (see now St. 1928, c. 316, § 5), but it would not follow that the truck was not legally registered. It does not appear that the "carrying capacity" was misstated in the application for registration, that the truck was not registered for the "carrying capacity" "determined by the division" of highways, which "determination" by express statutory provision was to be final and conclusive (G. L. c. 90, § 2, as amended by St. 1924, c. 224, see now St. 1928, c. 316, § 3), nor that such "weight" and "maximum carrying capacity" were not determined. in accordance with rules established under authority of G. L. c. 90, § 33, as amended. No misdescription of the truck at the time of registration was shown (compare *Staley* v. *Wilbur,* 258 Mass. 481; *Rosenthal* v. *Liss,* 269 Mass. 373) and the overloading did not effect such a material change in the truck that it was no longer the motor truck originally registered. (Compare *Nichols* v. *Holyoke Street Railway,* 250 Mass. 88; *Wallace* v. *New Bedford & Onset Street Railway,* 259 Mass. 20.) Therefore, it could not have been found that the truck was a nuisance on the highway within the principle laid down in the line of cases of which *Koonovsky* v. *Quellette,* 226 Mass. 474, *McDonald* v. *Dundon,* 242 Mass. 229, *Brown* v. *Alter,* 251 Mass. 223 (see also *Dudley* v. *Northampton Street Railway,* 202 Mass. 443) are examples, nor that its operation was within the prohibition,

by G. L. c. 90, § 9, as amended by St. 1922, c. 303, § 3, (see now St. 1928, c. 381, § 3), of the operation on any way of an unregistered motor vehicle. No statute prohibits the operation of a motor truck where truck and load exceed the aggregate "weight" and "maximum carrying capacity" for which it is registered, or imposes a penalty therefor unless such operation is in violation of an authorized rule or regulation. See G. L. c. 90, § 20, as amended by St. 1922, c. 130; § 31; § 31A, added by St. 1924, c. 457. Said § 31A expressly authorizes the division of highways to make rules and regulations covering "the establishment of the maximum weight of loads per commercial motor vehicle and per inch of tire in contact with the surface" of ways and imposes a penalty for violation of such a rule or regulation. Since the record, unlike that in *Fox* v. *Pallotta,* 274 Mass. 110, discloses no evidence, and not even a suggestion by either party, that such authority has been exercised, we are not called upon to consider the effect of a violation of such a rule or regulation. See *Commonwealth* v. *Crane,* 158 Mass. 218; *Rogers* v. *Abbott,* 248 Mass. 220; *Seemann* v. *Eneix,* 272 Mass. 189, 195–196.

*Exceptions overruled.*