Charles J. Shaw, Admr. *v.* Parnell Moore.

May Term, 1932.

Present: Powers, C. J., Slack, Moulton, Thompson, and Graham, JJ.

Opinion filed October 18, 1932.

*Jones & Jones* and *W. E. Eno* for the plaintiff.

*Fenton, Wing, Morse & Jeffords* for the defendant.

GRAHAM, J.   This action is brought to recover damages resulting from the alleged wrongful death of plaintiff's intestate, Helen Shaw, which occurred on July 25, 1930, while she was riding as a guest passenger on the running board of a Buick sedan, which was owned and operated by the defendant.   The case was tried below upon a charge of gross negligence on the part of the defendant, and upon the plaintiff's claim of Miss Shaw's freedom from contributory negligence.   At the close of the evidence the trial court directed a verdict for the defendant on the ground that the evidence considered most favorable to the plaintiff failed to show gross negligence, and also on the ground that Miss Shaw was guilty of contributory negligence as a matter of law.   To these rulings and orders the plaintiff excepted.

The plaintiff's right of recovery is controlled, as he concedes, by No. 78, Acts of 1929, which provides that: "The owner or operator of a motor vehicle shall not be liable in damages for injuries received by any occupant of the same occasioned by reason of the operation of said vehicle unless such owner or operator has received or contracted to receive pay for the carriage of said occupant, or unless such injuries are caused by the gross or wilful negilgence of the operator."   The changes effected in our law of negligence by the enactment of this statute have recently been considered and stated by this Court in *Sorrell* v. *White,* 103 Vt. 277, 153 Atl. 359.   In that case we also pointed out the distinction between the terms "gross" and "wilful" negligence, and held, in effect, that they differed in kind and not merely degree.   In *Sorrell* v. *White, supra,* at page 284 of 103 Vt., 153 Atl. 359, we have defined the term "wilful negligence," but now for the first time the term "gross negligence,"

as used in the statute, comes before us directly for definition. This Court has recognized and applied, without statutory provision, the term "gross negligence" to the relationship established by a gratuitous bailment (*Carpenter* v. *Branch,* 13 Vt. 161, 37 A. D. 587, *Spooner* v. *Mattoon,* 40 Vt. 300, 94 A. D. 395, *Whitney* v. *First Nat. Bank,* 55 Vt. 154, 45 A. R. 598), but the term has never been defined in our cases.   Other courts have frankly admitted the difficulty of formulating a satisfactory definition. Lord Cranworth (then Baron Rolfe) in *Wilson* v. *Brett,* 11 M. & W. 113, and Willis, J., in *Grill* v. *General Iron Screw Colliery Co.,* L. R. 1 C. P. 600, stated that gross negligence is ordinary negligence with a vituperative epithet.  See *Briggs* v. *Taylor,* 28 Vt. 180, 185.   However, the law of Massachusetts has long recognized the doctrine of definitive degrees of negligence (*Massaletti* v. *Fitzroy,* 228 Mass. 487, 118 N. E. 168, L. R. A. 1918C, 264, Ann. Cas. 1918B, 1088), and the Supreme Judicial Court of that state, while admitting the inherent impossibility of defining "gross negligence" with the utmost precision (*Altman* v. *Aronson,* 231 Mass. 588, 121 N. E. 505, 506, 4 A. L. R. 1185), has given to it a meaning of sufficient distinctness to be applied usefully by courts and juries to particular facts before them. *Cook* v. *Cole,* 273 Mass. 557, 174 N. E. 271, 273.   We adopt the definition of that court.   Gross negligence is substantially and appreciably higher in magnitude and more culpable than ordinary negligence.   Gross negligence is equivalent to the failure to exercise even a slight degree of care.   It is materially more want of care than constitutes simple inadvertence.   It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care.   It is very great negligence, or the absence of slight diligence, or the want of even scant care.   It amounts to indifference to present legal duty, and to utter forgetfulness of legal obligations so far as other persons may be affected.   It is a heedless and palpable violation of legal duty respecting the rights of others. The element of culpability which characterizes all negligence is, in gross negligence, magnified to a high degree as compared with that present in ordinary negligence.   Gross negligence is manifestly a smaller amount of watchfulness and circumspection than the circumstances require of a prudent man.   But it falls short of being such reckless disregard of probable consequences

as is equivalent to a wilful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from wilful and intentional conduct which is or ought to be known to have a tendency to injure. *Altman* v. *Aronson, supra; Massaletti* v. *Fitzroy, supra; Marcienowski* v. *Sanders,* 252 Mass. 65, 147 N. E. 275; *Learned* v. *Hawthorne,* 269 Mass. 554, 169 N. E. 557; *Cook* v. *Cole, supra; Lee* v. *Chamberlain,* 84 N. H. 182, 148 Atl. 466 (governed by the law of Massachusetts).

There is no dispute between the parties as to the rule of law to be applied; both parties in their briefs urge us to adopt the definition just stated. Likewise, the material facts respecting the defendant's conduct are not in dispute. The only question is whether the undisputed facts bring the case within the rule. The plaintiff argues that the evidence made it a jury question whether the defendant was guilty of gross negligence; the defendant, on the other hand, maintains that the evidence was of such character that reasonable men can fairly draw but one conclusion from it, that is, that the defendant was not as a matter of law guilty of any act or omission constituting gross negligence.

On the evening in question the defendant, and Miss Shaw, accompanied by three companions, drove to Waterhouse's beach at Lake Dunmore in defendant's automobile and there went bathing. After bathing, the members of the party left the lake about 10.30 or 11 o'clock P.M., in defendant's car to return to Higgins Tavern about one mile away, where they were to change from their bathing suits. The three friends got into the back seat and rode in a kneeling position to protect the cushion from their wet bathing suits. The defendant took the driver's seat in front. No one occupied the other front seat. The defendant asked Miss Shaw twice to get into the car and ride in the front seat. One of the other passengers asked her at least once to ride inside the car. She refused to do this and said she preferred to ride on the running board, and that she would be all right there. She stood on the right running board by the post between the two doors, facing the car, about in the center, but a little nearer the front. The position on the car taken by Miss Shaw for the purpose of the ride was entirely of her own choosing and against the wishes and requests of the defendant. There was ample room inside the car available to her had she desired to occupy

it. While so riding, some part of the person of Miss Shaw came into contact with a guard rail located six to nine inches outside the traveled edge of the highway, resulting in injuries causing her death.

This guard rail consisted of two posts about six feet apart upon which were fastened two plank rails, one at the top and one at the bottom, which projected slightly beyond the outside of the posts. The posts and planks were not over four feet high and were of brown color. The highway was seventeen to eighteen feet wide, gravel surface, level and smooth, and no obstruction to even and regular operation of the car. There was no traffic from the opposite direction, and the lights on defendant's car were burning brightly. The speed of the car was from twenty-five to thirty miles an hour, and this rate of speed was kept steady and constant. There were no suggestions made by Miss Shaw nor by any of the passengers inside the car as to the manner of its operation; nor was there any irregularity, or out of the ordinary, normal course of driving that attracted the attention of the passengers inside the car which called for remonstrance, or suggestion. As the car proceeded there was general conversation among all of the party, but the defendant did not turn around to talk to the passengers in the rear seat, nor did he take his eyes off the road ahead; he was paying strict attention to the operation of his car. The defendant did not see the guard rail before the accident, nor, so far as appears of record, did any of the other occupants of the car. When the car was opposite to the guard rail, a crash of glass was heard; the car was stopped within a distance of fifteen feet; Miss Shaw was found lying at the edge of the road at the north and of the guard rail. There was no impact of the car against anything, nor were the fenders, running board, or mud guard damaged. The plaintiff does not claim that any part of the car hit the guard rail. The damages to the car consisted of a broken handle of the right front door, broken glass from the window of the right rear door and from a window behind it, and a dent in one of the doors. Miss Shaw sustained, in addition to cuts and contusions about the head, fractures of the sixth, seventh, eighth, and ninth ribs on the right side, about over the region of the breast, and also a penetrating wound in the left thigh, three or four inches below the hip, about one inch in diameter

and quite deep. She died the next day of embolism caused by the puncture of the lungs or other tissue by the fractured ribs. No one who testified at the trial saw just how Miss Shaw was injured, but the evidence justifies the inference that she struck the guard rail and was crushed against the car, and that the injury to her hip was caused by contact with the door handle.

Miss Shaw was eighteen years of age, five feet six or seven inches in height, and weighed 135 to 140 pounds. The car was a Buick sedan, 14½ feet in length, over all, and 6 feet in height above the ground. The running board was 11½ inches above the ground and 12 inches wide. The door handle was 30 inches above the running board. The distance from the ground to the lower part of the door glass frame was 49 inches, and from the ground to the top of the door glass frame was 64 inches.

It further appeared that a person standing in an upright position on the running board could not talk to any person inside the car without bending down to a position where her person would project at least a foot outside of the outside edge of the running board, and that a person five feet six inches in height, standing erect on a running board 11½ inches above the ground, could not come into contact in the region of the sixth or ninth ribs with an object not over four feet above the ground. The defendant argues that these facts logically impel the conclusion that the accident would not have happened if Miss Shaw had stood in an upright position upon the running board; that for the purpose of conversation with the occupants of the car she must have stooped and leaned so that her person was projected beyond the outside edge of the running board and thus brought into contact with the guard rail. The plaintiff argues that, even so, in view of defendant's knowledge that Miss Shaw was riding upon the running board, he was guilty of gross negligence in driving the car to the extreme edge of the highway and into such close proximity to the guard rail. If the argument were addressed to the issue of ordinary negligence, the sufficiency of the facts of such inattention on the part of the defendant to make it a jury question might be free of difficulty, but here, as we have seen, the plaintiff's case must contain an element of culpability of an aggravated character which is substantially and appreciably higher in magnitude than that which characterizes ordinary negligence. Numerous cases are cited in the briefs in which the facts are dissimilar to the present case.

There is slight aid in the comparison of such cases. Each case must stand on its own peculiar facts. *Manning* v. *Simpson*, 261 Mass. 494, 159 N. E. 440. The plaintiff relies on *Terlizzi* v. *Marsh*, 258 Mass. 156, 154 N. E. 754, in which it was held that the issue of gross negligence was for the jury. In that case the defendant encouraged and permitted a little girl of $7\frac{1}{2}$ years to stand and ride upon the running board of his car, and as he was turning his machine upon a rough road and at an excessive speed, she was thrown from the running board and injured. The dissimilarity of these facts with those in the instant case is too apparent to require discussion. Miss Shaw was a girl of mature years; her position on the defendant's car was of her own choosing. The plaintiff makes no claim that the speed was excessive; and the road was smooth and straight. At most, the defendant, through inattention or misjudgment, drove too close to the edge of the highway to allow room for Miss Shaw's person to clear the guard rail. It is common knowledge that the clearance of objects with the right edge of the right fenders and running board is not, in the normal course of driving, controlled by sight, but by judgment based upon experience in driving. Ordinarily, the judgment is not conditioned by personal experience to allow clearance for projecting objects. Miss Shaw knew what her position was upon the running board, and she was in a better position to observe and to warn the driver of approaching dangers to her. Quite true, in a case of gross negligence, like one of ordinary negligence, the consequences likely to result is a fact to be taken into consideration in determining the kind and amount of caution to be exercised. See *Ryder's Admr.* v. *Hayward*, 98 Vt. 106, 109, 126 Atl. 491, 36 A. L. R. 453. But in the absence of warning or knowledge of her peril the defendant had a right to assume that Miss Shaw's person was kept, at least approximately, within the outside limits of the car. We hold that the facts taken singly or in combination do not constitute gross negligence, and that the direction of a verdict for the defendant on that ground was proper.

In view of our disposition of the case on the issue of defendant's liability for gross negligence, the plaintiff's exceptions respecting the question of contributory negligence need not be considered. They became purely academic.

*Judgment affirmed.*