Alexander R. Campbell *vs.* William E. Costin.

Essex.    November 4, 5, 1935. — January 27, 1936.

Present: Rugg, C.J., Crosby, Pierce, Donahue, & Qua, JJ.

*Negligence*, Gross, Motor vehicle, In use of way.

On all the evidence, a finding was warranted of gross negligence of the
driver of an automobile who, with traffic approaching from the opposite
direction, cut out of line to the left side of the road to pass an automo-
bile ahead.

Tort.    Writ dated August 27, 1930.

The action was tried in the Superior Court before
*Brogna*, J., who denied a motion by the defendant that a
verdict be ordered in his favor.   Subject to leave reserved,
a verdict for the plaintiff in the sum of $8,000 was recorded.
The judge denied a motion by the defendant that a ver-
dict be entered in his favor.   The defendant alleged ex-
ceptions.

*J. F. Doyle*, for the defendant.

*P. A. Kiely*, for the plaintiff.

Rugg, C.J.    The plaintiff was riding as a guest in
an automobile operated by the defendant.   He received
severe injuries by reason of a collision between the auto-
mobile in which he was riding and another automobile
coming in the opposite direction.   The single question for
decision is whether there was evidence sufficient to sustain
the verdict for the plaintiff, which was based on a finding
that the injuries of the plaintiff were caused by the gross
negligence of the defendant in operating his automobile
from Andover toward Reading.   The accident happened
shortly before midnight on June 28, 1930, on a much trav-
elled macadam highway in the town of Reading.   The
plaintiff was riding on the seat with the defendant.   There
were three others on the back seat.   The weather was clear
and dry.   The road at or near the place of collision varied
in width from twenty-three to twenty-six feet, with soft

shoulders at each side and a high pitch in the middle. The extreme width of the road about six hundred feet away was forty-three feet. There were no cross streets in the vicinity. There was an elevation in the road from Andover toward Reading; it "starts to go up a little over two hundred feet and then it begins to go down again" and then is level; there was also a curve to the right at or near the elevation. The road at this place was "like the neck of a bottle." One travelling from Reading toward Andover and approaching the place of the accident would have difficulty in seeing anyone coming up over the brow of the hill in the opposite direction until he got almost around the curve. The place of the accident was at the beginning of the curve. The travel was heavy coming from Andover toward Reading.

The defendant testified in substance that as he was travelling thirty to thirty-five miles an hour he noticed an obstruction ahead of him caused by an automobile moving about twenty miles an hour. Automobiles ahead of him turned out to pass that one which was slowing up the traffic. As a result, he decided to pass it. There was a mark in the center of the road; it was not laid out in three lanes. He followed the slow-moving automobile for a distance and then, when it was about two feet from its right edge of the road, he turned out to pass it. When he started to turn to his left to go by, he saw headlights coming from the opposite direction and increased his speed and came abreast of the automobile he was trying to pass, but he was unable to pass it. The Galloway automobile coming in the opposite direction went by, and then he observed another automobile directly behind and about fifteen feet distant from it. That was the Spavin automobile, with which the automobile of the defendant collided. The driver of the automobile he was attempting to pass increased its speed after he started to pass; it was the defendant's purpose at some time to try to turn in front of that automobile and get back on his right side of the road. When he first noticed the Galloway automobile, it was two hundred feet away from him and he did not know

exactly how fast it was going at that time and he made no judgment in that respect. He intended, if he could, to turn in front of the automobile he was passing before the Galloway automobile reached him. He realized that if he was not able to pass the other automobile before the Galloway automobile arrived near his automobile there was danger of a collision. After seeing the headlights of the Spavin automobile he did not know how fast that automobile was coming; he could not form any judgment with regard to its speed. And he thought he had his eyes on the Spavin automobile all the time after he saw it until the collision occurred; so that, from the time he first saw the Spavin automobile up until the time of the accident, he saw both automobiles approaching. He did not know whether he could have stopped his automobile and got behind the one that he was attempting to pass; he could have slowed his automobile at any place at any time. He could have slowed down so much that the automobile he was trying to pass could have gone ahead out of the way; he never passed the automobile that he was trying to pass. He wanted to get out of its way. He "put on his gas to increase his speed in order to try to get by the car he was trying to pass." The automobile that he was trying to pass never got ahead of that "neck and neck that they had there." He did not pay much attention to the Spavin automobile, even after he saw it. Other testimony of the defendant tended to show that he paid little or no heed to oncoming traffic because his eyes were on the automobile he was trying to pass.

There was testimony that the automobile driven by the defendant was on his left of the center of the road and that its speed was forty-five to fifty miles an hour. The driver of the Galloway automobile testified that she drove to her extreme right of the road in order to avoid collision with the automobile of the defendant. The driver of the Spavin automobile testified that, as soon as he saw the Galloway automobile turn to the right, he put on his brakes and also turned to his right as far as he could, but was unable to get out of the way of the defendant.

The jury might have found that the accident would have been avoided if the defendant had ceased his attempt to pass the automobile in front when an ordinarily prudent driver would have appreciated danger.   There was evidence that the defendant at the time of the collision was violating the law of the road, G. L. (Ter. Ed.) c. 89, §§ 1, 4, was operating his automobile negligently so that the lives or safety of the public might be endangered, G. L. (Ter. Ed.) c. 90, § 24, and was operating it at a speed greater than was reasonable and proper, having regard to the traffic and the use of the way, G. L. (Ter. Ed.) c. 90, § 17. A majority of the court are of opinion that in all the circumstances it cannot quite be ruled as matter of law that the verdict resting on a finding of gross negligence of the defendant was unwarranted.   The case at bar falls within the class illustrated by *Lefeave* v. *Ascher,* 292 Mass. 336; *Schusterman* v. *Rosen,* 280 Mass. 582; *Curtis* v. *Comerford,* 283 Mass. 589; *Learned* v. *Hawthorne,* 269 Mass. 554; *Leonard* v. *Conquest,* 274 Mass. 347.   It is distinguishable from cases like *Perkins* v. *Gardner,* 287 Mass. 114, 118; *Desroches* v. *Holland,* 285 Mass. 495; *Richards* v. *Donohue,* 285 Mass. 19; *Stetson* v. *Howard,* 284 Mass. 208; *Gardner* v. *Renton,* 269 Mass. 246.

*Exceptions overruled.*