Ernest O. McCLURE, Appellant
(Defendant below),
and
George Acuff Drilling Company
(Defendant below),

v.

Bernetta LATTA and Robert Latta, Appellees
(Plaintiffs below).

No. 2893.

Supreme Court of Wyoming.

Feb. 3, 1960.

Murane, Bostwick & McDaniel, Casper, Edward E. Murane, Casper, for appellant.

Ernest Wilkerson and Robert J. Murphy, Casper, for appellees.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Justice PARKER delivered the opinion of the court.

This cause arises from a one-car accident on December 31, 1953, wherein an automobile belonging to the George Acuff Drilling Company, and driven by Ernest O. McClure, went off the Campbell curve on the Lander-Hudson highway. Mrs. Bernetta Latta, a guest of the driver McClure, was seriously injured in the crash; she with her husband brought suit against both McClure and the George Acuff Drilling Company. At the close of plaintiffs' case, the court on motion dismissed as to the company, and the case proceeded against McClure. The jury rendered a verdict in favor of Mrs. Latta in the sum of $50,-000 and in favor of the husband in the

sum of $9,194.32, and judgment was entered thereon. This appeal is prosecuted from such verdicts and judgment.

The principal issue is the application of § 31-233, W.S.1957,[1] commonly known as the guest statute, to the facts in the case, it being alleged in the pleadings and admitted that Mrs. Latta was a guest of McClure and defendant urging that he was not guilty of gross negligence upon which liability could be based under the guest statute.[2]

The record discloses evidence of the following occurrences: By mutual arrangement, Mrs. Latta met McClure in Casper on December 31, 1953, and accompanied him as a guest on a trip to Lander that afternoon. En route they each had a couple of drinks of whiskey from a bottle. They registered at a hotel in Lander, going to their separate rooms, and thereafter met in a bar where they had two or three drinks. About eight o'clock they left for Hudson where they expected to have dinner. Mrs. Latta said that at the edge of Lander McClure started out with quite a burst of speed. McClure testified that there was no ice or snow on the road, that the night was clear but that it was dark, and that he drove about 50 miles per hour all the way. Some two miles out of town, immediately prior to the Beebe curve, they passed a 1947 Dodge driven by Paul Ogden who was accompanied by his wife and Mr. and Mrs. Walter Richie. Ogden said that he was traveling about 30 miles per hour when McClure came up behind him; that as McClure passed he (Ogden) slowed his speed to avoid a possible accident on the curve; that between the Beebe curve

and the Reiding ranch turnoff, some 675 feet down the road, he increased his speed "to about 40 miles an hour. Between 30 and 40." He estimated McClure's speed in passing at 50 miles per hour; said, "The car passed me prior to the Beebe curve at a place where I should not have been passed, and at a speed that should not have been obtained to make that curve." Just after the McClure car had passed, Ogden exclaimed, "He made that one, but he won't make the next one."[3] Ogden said McClure's car swayed after he got around the curve, that McClure decreased his speed and thereafter increased it. Over the defendant's objection as to lack of qualification, the passengers, Mr. and Mrs. Richie and Mrs. Ogden, testified variously as to the speed of the Ogden car as being 30 to 40 miles per hour at the point of the passing and the speed of the McClure car as "very fast" and "65 to 70." Richie said that McClure's car swerved in "heading back" after the Beebe curve. Mrs. Latta, who was not clear as to the exact point of passing on the Beebe curve, said that she remembered the tires squealing as they passed the car and went around the curve, and she said to McClure, "That's a little fast, don't you think?" McClure says he does not recall her saying anything. Some 1,885 feet from the Beebe curve toward Hudson is the Campbell curve where the road slopes downhill. Some 225 feet preceding this in the borrow pit on the right-hand side of the road is a highway marker showing a sharp curve to the left and the number "30" below the curve sign. McClure says that for some unknown reason he did not see the curve sign; that he continued to drive about 50 miles per hour

1. "No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or wilful and wanton mis-conduct of the owner or operator of such motor vehicle and unless such gross negligence or wilful and wanton mis-conduct contributed to the

injury, death or loss for which the action is brought."

2. Plaintiffs' petition alleged gross negligence and wilful and wanton misconduct of the defendant but the argument is limited to gross negligence.

3. Defendant moved to strike this as a conclusion of the witness, not a statement of fact, but was overruled and does not argue the matter in this court.

toward the Campbell curve. He says that he knew, from the twenty-five or thirty times he had been over the road, that the Campbell curve was there but didn't know just where and thought that it turned right instead of left; that at the Campbell curve he was driving 50 miles per hour; that the lights from the Ogden car blinded him and he went straight off the curve. He said he didn't know he was in trouble until the right front side of the car started dropping, going off the curve first. He testified:

"And then I turned the wheel back to try to get back on the road, and that throwed the back end in the ditch, two wheels on top of the road, on top of the borrow pit. I went ahead and opened it up to try to bring it out of the skid, because I was skidding sideways on around the curve in the borrow pit, with two wheels on top, the front wheels cut towards the direction I was skidding in. I thought I was going to bring it out of it. It looked like I was going to make it all right. And I hit the road approach to this little house * * *. * * * when the back wheels hit that, the next thing I knew I seen the pavement directly underneath me. I hit on the left front fender out in approximately the middle of the road, and then rolled off on the corner and started rolling sideways, wound up down in the alfalfa field across the borrow pit."

According to the investigating officer, the car turned over one and a half times and stopped at a point approximately 140 feet from where it left the highway.

Mrs. Latta's account of what happened immediately preceding the crash was as follows: "Everything was so fast. There was a sensation of going around the [Beebe] curve, the screeching, the righting of the car, and the lights, and that's it." On direct examination she said of the light that after the Beebe curve her next recollection was a light; asked what it was, she said, "The light was very soon after the screeching of the tires, and I noticed what I thought was a dirty windshield, which I am sure it was." On cross-examination counsel referred many times to a "blinding" light, and Mrs. Latta assented to the description, or at least did not correct him, and at one time said that the brilliance stuck in her memory.

Ogden testified that when he reached the Reiding ranch turnoff (675 feet from the Beebe curve) he turned on his bright lights and that when he was about halfway down the lane from the Beebe curve to the Campbell curve he saw McClure's brake lights go on and the car "start into its roll," and said, "There he goes." He estimated McClure's speed as twice that of his car. Mrs. Latta was seriously injured, help was summoned, and she was taken to the hospital. The highway patrolman who investigated the accident testified that the cause of the accident was "Speed too fast for conditions."

Counsel make no point of the amount of the damages flowing from the injuries, but confine argument to the insufficiency of the evidence to support the verdicts and judgment, emphasizing the lack of showing that there was excessive speed and urging the insufficiency of speed alone as constituting gross negligence; the fact that any failure to observe the warning sign was at most simple negligence not proximately related to the accident; and McClure's being blinded as the actual cause of the crash.

■ The burden of defendant's contention as to speed is that there was no positive and compelling testimony on the subject. He admits that the investigating patrolman stated the cause of the accident to be "speed too fast for conditions," but says that this was vague, indefinite, uncertain, and testimony solely from memory, overlooking the fact that apparently the trial court considered the officer to be an expert witness and entitled to express an opinion. As we said in Macy v. Billings, 74 Wyo. 404, 289 P.2d 422, 424, " 'the question of whether an expert witness is qualified rests largely in the judicial discretion of the trial court,' * * * and we do not feel warranted to

reverse the cause herein simply because the court considered Peterson [the officer] an expert." In any event, there was no objection to the testimony, and since a rule of evidence not invoked is waived, 1 Wigmore on Evidence, 3 ed., p. 321, the jury was entitled to consider the patrolman's opinion in arriving at its verdicts.

■ It is urged that the statements of Mr. and Mrs. Richie and Mrs. Ogden were conflicting in some respects, that there was no foundation laid for testimony from them as to speed, and that their evidence was inadmissible as being conclusions. We agree that there might be a difference in viewpoint as to what weight should be accorded the testimony of these obviously nonexpert witnesses since they had not made speedometer readings or testified in detail as to the basis upon which they could determine exact speed. However, their testimony was competent to be admitted for such weight as the jury might determine from a consideration of it in conjunction with all of the facts brought out at the trial. "Expert testimony may be used to aid in determining speed, but testimony of nonexpert witnesses is equally competent." 9C Blashfield, Cyclopedia of Automobile Law and Practice, perm. ed. 1954, p. 382. This is in accord with 2 Jones on Evidence, 5 ed., p. 763:

> " * * * The rate of speed of automobiles on public streets and highways is a matter of daily observation and some knowledge by substantially all persons; it is not a matter exclusively of expert knowledge or skill. Where the rate of speed of such a vehicle is material in an action, any person of ordinary capacity and means of observation who may have observed the vehicle may give his estimate as to the rate of speed at which it was moving. The extent of his observation goes to the weight of his testimony."

■ Defendant seeks to discredit the testimony of Ogden as to speed because of discrepancies and indefiniteness. It was suggested that the witness was impeached because in an alleged former deposition he had made some statement regarding McClure's having driven in a normal manner. The record shows that the deposition question to Ogden contained the qualifying phrase, "apart from the speed." Thus, there was no real inconsistency between his answer there and his testimony in court. In any event, the evaluation of the testimony was for the jury.

It is argued that Mrs. Latta in talking about the trip from Casper to Lander said she had no complaints and that McClure was then driving normally. It is further argued that her remark, "That's a little fast, don't you think?" was not really a protest against extreme speed, especially in the light of a statement made by her to Costlow, an insurance investigator, on January 7, 1954, and another made to Poole, an insurance company representative, on February 8 of that year wherein she indicated no criticism of McClure's driving. The jury was entitled to evaluate all testimony bearing on this subject, including evidence tending to show Mrs. Latta to have been in serious physical and mental condition during January and February 1954 and her categorical denial of ever having seen the insurance men who purported to have taken the statements.

Some reliance is placed by defendant upon the failure of certain other persons to recall or notice the highway warning sign, and upon his own testimony that he could safely make the curves at 50 miles per hour (the speed which he admitted). He seems to think this evidence tends to contradict any showing of gross negligence. Such a view is so broad that it could not be accepted unless substantiated by persuasive authority, and none is cited.

■ McClure testified that he was blinded by the lights of the the Ogden car just prior to the crash. Plaintiffs' counsel insist that the matter was not pleaded or raised by McClure in any way until the time of the trial and that this defense was an afterthought. Plaintiffs sought to show that the lights of a 1947 Dodge car at the

distance from the Reiding ranch turnoff to the Campbell curve, a distance of over 1,200 feet, would not be strong enough to cause any brilliance or blinding effect, but objection was interposed on the ground that the conditions of a proffered experiment were not the same, and the evidence was excluded. As stated in Beck v. Givens, 77 Wyo. 176, 309 P.2d 715, 313 P.2d 977, a trier of fact may not disregard the uncontradicted testimony of a witness where no reason appears for doubting the accuracy or the credibility of the witness. Here we think that the jury was not bound to accept at face value defendant's statement that "the lights came on bright and blinded me, and I went straight off the curve." They were obligated to consider such testimony, but they were entitled to consider also the testimony of Mr. Latta that Mc-Clure repeatedly recited to him the cause of the accident as being something other than being blinded by lights from the rear, and we think they were not precluded from relying upon the general knowledge of the physical facts regarding automobile headlights which are matters of judicial notice. We find no cases on the point identical to the one before us, but we are convinced from the reading of various authorities that the jury should not be restricted on this point. 9 Wigmore on Evidence, 3 ed., p. 542, states:

> " * * * so far as the matter in question is one upon which men in general have a common fund of experience and knowledge, through data notoriously accepted by all, the analogy of judicial notice by the judge obtains here also, to some extent, and the jury are allowed to resort to this information in making up their minds."

More specifically, 9B Blashfield, Cyclopedia of Automobile Law and Practice, perm. ed. 1954, pp. 395–397, says that determinations of matters of common knowledge relate to the lights on automobiles and cites various cases to support the view. See also 15–16

Huddy Cyclopedia of Automobile Law, 9 ed., p. 272. Moreover, the jury in determining whether or not there was gross negligence was entitled also to have in mind defendant McClure's knowledge of the extreme curving condition of the road and of the potential effect of the headlights of a following car.

Defendant argues that failure to observe the curve warning sign was not the proximate cause of the accident, citing cases to the effect that the violation of a legal or statutory duty does not carry liability for injury unless such violation is the proximate cause thereof. He points out that plaintiffs in order to recover have the burden of establishing defendant's gross negligence and cites authorities that excessive speed is not necessarily negligence leading to liability unless it is the proximate cause of the accident. He also cites cases determined by this court in which we have said in case of momentary blindness of the driver the question of negligence is for the jury. It is not necessary that we discuss these authorities since the principles cited are uncontroverted and the sole question for our decision is whether or not the evidence adduced at the trial makes a sufficient showing to warrant the submission of the case to the jury. There is, of course, the correlative question of the jury's justification in rendering the verdicts, but this is dependent upon the propriety of the matter having been submitted to them.

Cases such as the one before us are not without difficulty since the meaning of the term "gross negligence" has often varied both in the inherent definition and in its application to a set of circumstances.[4] However, this court has heretofore provided the definition applicable to this jurisdiction, and there is no occasion to depart therefrom. In Arnold v. Jennings, 75 Wyo. 463, 296 P.2d 989, 990, we defined gross negligence as indifference to present legal duty and utter forgetfulness of legal obligations. See also Hawkins v. L. C. Jones

---

4. 18A Words and Phrases, Gross Negligence, p. 518 ff.; 4 Blashfield, Cyclo-
pedia of Automobile Law and Practice, perm. ed. 1946, p. 370 ff.

Trucking Co., 68 Wyo. 275, 232 P.2d 1014. Prior to that time in Mitchell v. Walters, 55 Wyo. 317, 100 P.2d 102, 107, we had quoted two cases from other states which accorded with our views:

"* * * 'Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence. But it is something less than the willful, wanton and reckless conduct which renders a defendant who has injured another liable to the latter even though guilty of contributory negligence, or which renders a defendant in rightful possession of real estate liable to a trespasser whom he has injured. It falls short of being such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from willful and intentional conduct which is or ought to be known to have a tendency to injure. * * *' [Altman v. Aronson, 231 Mass. 588, 121 N.E. 505, 506, 4 A.L.R. 1185.] * *"

"* * * 'The element of culpability which characterizes all negligence is, in gross negligence, magnified to a high degree as compared with that present in ordinary negligence. Gross negligence is manifestly a smaller amount of watchfulness and circumspection than the circumstances require of a prudent man. But it falls short of being such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from willful and intentional conduct which is or ought to be known to have a tendency to injure.' [In Shaw, Adm'r v. Moore, 104 Vt. 529, 162 A. 373, 374, 86 A.L.R. 1139.] "

 Defendant insists a verdict should have been directed in the present case,

arguing in effect that we have no alternative but to say, *as a matter of law,* that there was no gross negligence. We think there is little justification for our so holding. It is of course elementary that whether or not a motorist involved in an accident has been guilty of gross negligence must be determined by the facts and circumstances in the particular case.[5] However, there is little conflict among the authorities in the view that where the evidence is legally sufficient and conflicting or different inferences of fact may reasonably be drawn therefrom it is for the finder of fact to determine the issue of gross negligence. 61 C.J.S. Motor Vehicles § 526f (11), p. 488. 10A Blashfield, Cyclopedia of Automobile Law and Practice, perm. ed. 1955, pp. 624–626, states the matter more strongly:

"Gross negligence is generally a question of fact for the jury or for the trial court sitting without a jury, and it becomes a question of law only when it is clear that but one conclusion can be drawn. If reasonable minds might draw different conclusions from the evidence, the question is for the jury."

5A Am.Jur. Automobiles and Highway Traffic § 530, after stating that such determination is usually a question for the jury, says, "The courts do not ordinarily interfere with the jury's conclusions." The question has been definitely resolved in Wyoming by the case of Meyer v. Culley, 69 Wyo. 285, 241 P.2d 87, 96, wherein we said that ordinarily the question of negligence, whether slight or gross, is one of fact; and that if the evidence respecting it is in conflict and is such that ordinary minds might draw different conclusions therefrom, then a question of fact is presented for the jury to determine.

In the light of the general authorities, the precedents from other courts, and the views expressed in former Wyoming cases, our duty in this decision is clear and unequivocal. If reasonable minds might well have differed in interpreting the facts and ar-

5. Mitchell v. Walters, 55 Wyo. 317, 100 P.2d 102.

riving at a conclusion regarding the gross negligence of defendant, then the trial court was correct in overruling defendant's motion for directed verdict and for a judgment notwithstanding the verdict, and the judgment must be affirmed. If on the other hand the evidence adduced does not in the light most favorable to the plaintiffs show gross negligence, the cause must be reversed. Let us advert to the testimony.

As to the speed of defendant's car immediately prior to the crash, McClure testified it was 50 miles per hour, Ogden said it was twice as fast as his speed (30 to 40 miles per hour), and another witness said it was 65 to 70 miles per hour. Statements upon which a trier of fact would be entitled to draw inferences as to both speed and care included defendant's testimony, "At 50 miles an hour I figured I could take any of those curves along that road"; Ogden's statement that "He made this one, but he won't make the next one"; and Mrs. Latta's evidence that "We passed the car, and I remember the tires squealing as we went around the curve, and that's the time that I said, 'That's a little fast, don't you think?'" As to the cause of the accident, the patrolman said it was "Speed too fast for conditions," while defendant gave as the reason his being blinded by the Ogden lights.

The foregoing disputed testimony was of course subject to interpretation in the light of the uncontroverted evidence that the road was curving, which fact defendant knew because of having repeatedly traveled it, and that he failed to see the warning sign prior to the Campbell curve, which he thought went to the right and not to the left.

In Mitchell v. Walters, supra, after an exhaustive review of the authorities on the subject, we said, 100 P.2d 108:

> "* * * each case must to a large extent be ruled by its own circumstances as found by the trier * * * of fact, this being especially so touching the question of gross negligence and where substantial conflicts in evidence are presented."

In the present case the evidence was conflicting in numerous respects and in the aspects most favorable to the prevailing parties showed indifference to legal duty and utter forgetfulness of legal obligations. Under the rule effective in this jurisdiction, the case was properly submitted to the jury, and there was no error in denying defendant's motions.

Affirmed.